## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| ARSENAL INTERMEDIATE HOLDINGS, LLC, *et al.*,[1] | Case No. 23-10097 (CTG) |
| Debtors. | (Jointly Administered) |

## AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF ARSENAL INTERMEDIATE HOLDINGS, LLC AND ITS AFFILIATED DEBTORS

Dated:  May 22, 2023

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Sean M. Beach (No. 4070)
Elizabeth S. Justison (No. 5911)
S. Alexander Faris (No. 6278)
Shella Borovinskaya (No. 6758)
Telephone:  (302) 571-6600
Emails:  sbeach@ycst.com
         ejustison@ycst.com
         afaris@ycst.com
         sborovinskaya@ycst.com

*Counsel to the Debtors and Debtors in Possession*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are Arsenal Intermediate Holdings, LLC (2513), Arsenal Insurance Management, LLC (3990), and Arsenal Health, LLC (5247).  The Debtors' mailing address for the purposes of these chapter 11 cases is 7027 Halcyon Park Drive, Montgomery, Alabama 36117, c/o 3H Agent Services, Inc.

ARTICLE 1 HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTORS...................7

**1.1   Nature and History of the Debtors' Business.** ..................................................7

**1.2   Litigation by Beyond Risk Related to the Acquisition of Arsenal.** ............................7

**1.3   Filing of the Debtors' Chapter 11 Cases.** .....................................................8

**1.4   Legal Structure and Ownership.** ..............................................................9

**1.5   Debtors' Assets.** ..........................................................................10

**1.6   Debtors' Liabilities.** .....................................................................10

**1.7   Current and Historical Financial Conditions.** ..............................................11

**1.8   Significant Events During the Bankruptcy Cases.** ...........................................11

**1.9   The Proposed Beyond Risk Settlement.** ......................................................13

**1.10   Projected Recovery of Avoidable Transfers.** ...............................................14

ARTICLE 2 THE PLAN ..........................................................................15

**2.1   Unclassified Claims.** ......................................................................15

*A.    DIP Claims* .................................................................................15

*B.    Administrative Expenses* ....................................................................15

*C.    Professional Fees* ..........................................................................17

*D.    Priority Tax Claims* ........................................................................18

**2.2   Classes of Claims and Interests.** ..........................................................18

*A.    Classes of Other Secured Claims* ............................................................18

*B.    Classes of Priority Non Tax Claims* .........................................................19

*C.    Beyond Risk Intercompany Claims* ............................................................19

*D.    Class of General Unsecured Claims* ..........................................................19

*E.    Intercompany Claims* ........................................................................20

*F.    Class of Interest Holders* ..................................................................20

**2.3   Estimated Number and Amount of Claims Objections.** .........................................21

**2.4   Treatment of Executory Contracts and Unexpired Leases.** ....................................21

*A.    Assumption and Assignment in General* .......................................................21

*B.    Insurance Contracts* ........................................................................22

**2.5   Means for Implementation of the Plan.** .....................................................24

*A.    Transactions Effective as of the Effective Date* ............................................24

*B.    No Substantive Consolidation* ...............................................................24

*C.    Closing of Sales and Uses of Cash* ..........................................................25

*D.    The Beyond Risk Settlement* .................................................................25

*E.    The Liquidating Trust* ......................................................................25

*F.    Certain Powers and Duties of the Liquidating Trust and the Liquidating Trustee and the Independent Fiduciary* .................................................................................. 26

*G.    Exemption from Certain Taxes and Fees* ................................................................. 27

**2.6    Payments.** .............................................................................................................. 28

**2.7    Tax Consequences of the Plan.** ............................................................................. 28

*A.    Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets; Tax Reporting and Tax Payment Obligations* ...................................................... 29

*B.    Liquidating Trust Assets Treated as Owned by Beneficiaries of Liquidating Trust* ... 29

*C.    Tax Reporting* ....................................................................................................... 30

*D.    Payment of Taxes* ................................................................................................. 30

*E.    Federal Income Tax Consequences to Creditors* .................................................. 31

**2.8    Projections in Support of Debtors' Ability to Make Payments Under the  Proposed Plan.** ............................................................................................................................. 33

ARTICLE 3 FEASIBILITY OF PLAN ............................................................................ 33

**3.1    Ability to Initially Fund Plan.** ............................................................................. 33

**3.2    Ability to Make Future Plan Payments.** ............................................................. 33

ARTICLE 4 LIQUIDATION ANALYSIS ....................................................................... 34

ARTICLE 5 RELEASES, EXCULPATION, INJUNCTION, AND RELATED PROVISIONS 34

**5.1    Releases by the Debtors.** ...................................................................................... 34

**5.2    Releases by Holders of Claims and Interests.** .................................................... 34

**5.3    Exculpation.** ........................................................................................................ 35

**5.4    Injunction.** .......................................................................................................... 35

**5.5    Setoffs.** ................................................................................................................ 36

**5.6    Release of Liens.** ................................................................................................. 36

ARTICLE 6.... CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE ................................................................................................... 37

**6.1    Conditions Precedent to Confirmation.** .............................................................. 37

**6.2    Conditions Precedent to the Effective Date.** ...................................................... 37

**6.3    Waiver of Conditions.** ......................................................................................... 38

**6.4    Effect of Nonoccurrence of Conditions.** ............................................................ 38

ARTICLE 7 RISK FACTORS ........................................................................................ 38

**7.1    Litigation Recoveries** .......................................................................................... 38

**7.2    Claims for Health Benefits** .................................................................................. 39

ARTICLE 8 GENERAL PROVISIONS .......................................................................... 39

**8.1    Title to Assets.** .................................................................................................... 39

| **8.2** | **Binding Effect.** | 39 |
| **8.3** | **Severability.** | 39 |
| **8.4** | **Retention of Jurisdiction by the Bankruptcy Court.** | 40 |
| **8.5** | **Captions.** | 40 |
| **8.6** | **Modification of Plan.** | 40 |
| **8.7** | **Reporting Requirements.** | 40 |
| **8.8** | **Final Decree.** | 41 |

ARTICLE 9 ATTACHMENTS ....................................................................... 41

ARTICLE 10 FREQUENTLY ASKED QUESTIONS ................................... 41

ARTICLE 11 DEFINITIONS ......................................................................... 43

Capitalized terms used in this chapter 11 plan shall have the meanings set forth in Article 11.  The Debtors proposed this Plan for the resolution of outstanding Claims against, and Interests in, the Debtors.  The Debtors are the proponents of the Plan within the meaning of section 1189(a) of the Bankruptcy Code, and the Plan constitutes a separate plan for each of the Debtors.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments.  To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**YOU MAY OBJECT TO CONFIRMATION OF THE PLAN.  IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY 4:00 P.M. (PREVAILING EASTERN TIME) ON APRIL 26, 2023.  IF YOU FAIL TO TIMELY OBJECT TO CONFIRMATION OF THE PLAN, YOU MAY BE DEEMED TO CONSENT TO THE PLAN.**

**ARTICLE 5, SECTION 5.1 OF THE PLAN CONTAINS RELEASES BY THE DEBTORS OF ANY AND ALL CLAIMS AGAINST THE "RELEASED PARTIES" AS DEFINED IN THE PLAN.**

**ARTICLE 5, SECTION 5.2 OF THE PLAN CONTAINS RELEASES BY HOLDERS OF CLAIMS AND INTERESTS OF ANY AND ALL CLAIMS AGAINST THE "RELEASED PARTIES" AS DEFINED IN THE PLAN.  YOU MAY SUBMIT AN OPT-OUT FORM OPTING OUT OF THE RELEASES IN ARTICLE 5, SECTION 5.2.  IF YOU WISH TO SUBMIT AN OPT-OUT FORM OPTING OUT OF THE RELEASES IN ARTICLE 5, SECTION 5.2 OF THE PLAN, YOU MUST DO SO BY 4:00 P.M. (PREVAILING EASTERN TIME) ON APRIL 26, 2023.   PLAN PARTICIPANTS AND THE DEPARTMENT OF LABOR MUST OPT-OUT OF THE THIRD PARTY RELEASES BY 4:00 P.M. (PREVAILING EASTERN TIME) ON SEPTEMBER 27, 2023.**

---

**<u>FOR THE AVOIDANCE OF DOUBT, NOTHING CONTAINED HEREIN PRECLUDES A PARTICIPANT IN A HEALTH BENEFIT PLAN FROM SEEKING PAYMENT OR REIMBURSEMENT FROM SUCH HEALTH BENEFIT PLAN OR THE SPONSOR OF SUCH HEALTH BENEFIT PLAN.</u>**

---

**ARTICLE 5, SECTION 5.3 OF THE PLAN CONTAINS AN EXCULPATION BY BOTH THE HOLDERS OF CLAIMS AND INTERESTS AND THE DEBTORS OF ANY AND ALL CLAIMS AGAINST THE "EXCULPATED PARTIES" AS DEFINED IN THE PLAN.**

**THE OPT-OUT FORM MUST BE MAILED TO THE FOLLOWING ADDRESS OR SUBMITTED THROUGH THE OPT-OUT PORTAL, WHICH CAN BE ACCESSED BY CLICKING THE "SUBMIT OPT-OUT" LINK ON THE LEFT-HAND NAVIGATION PANEL OF THE DEBTORS' CASE WEBSITE AT: https://cases.ra.kroll.com/AIH**

**IF MAILED:**

> **If by First Class Mail:**
>
> **Arsenal Intermediate Holdings, LLC**
> **c/o Kroll Restructuring Administration, LLC**
> **850 3rd Avenue, Suite 412**
> **Brooklyn, NY 11232**
>
> **If by Overnight Courier or Overnight Mail:**
> **Arsenal Intermediate Holdings, LLC**
> **c/o Kroll Restructuring Administration, LLC**
> **850 3rd Avenue, Suite 412**
> **Brooklyn, NY 11232**

**IF SUBMITTED THROUGH THE OPT-OUT PORTAL:**

**Kroll Restructuring Administration, LLC, will accept Opt-Out Forms if properly completed through the Opt-Out Portal. To submit your Opt-Out Form via the Opt-Out Portal, visit https://cases.ra.kroll.com/AIH/, click on the "Submit Opt-Out" section of the website for the Debtors, and follow the instructions to submit your Opt-Out Form.**

**IMPORTANT NOTE: You will need your Unique Opt-Out E Form ID# in order to retrieve and submit your customized, electronic Opt-Out Form.**

**Kroll Restructuring Administration, LLC's Opt-Out Portal is the sole manner in which Opt- Out Forms will be accepted via electronic or online transmission. Opt-Out Forms submitted by facsimile, email or other means of electronic transmission will not be considered.**

**Holders of Claims who cast an Opt-Out Form using the Opt-Out Portal should not also submit a paper Opt-Out Form.**

**Opt-Out Forms submitted via Kroll Restructuring Administration LLC's online Opt-Out Portal will be deemed to contain an immediately legally binding signature.**

**If your Opt-Out Form is not received by Kroll Restructuring Administration, LLC on or before the Opt-Out Deadline, and such Opt-Out Deadline is not extended by the Debtors, your opt-out will not be considered effective.**

**The Opt-Out Form does not constitute, and shall not be deemed to be, (i) a proof of Claim; or (ii) an assertion or admission of a Claim.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR MAY 23, 2023 AT 10:00 A.M. (ET) IN COURTROOM NO. 7 AT THE U.S. BANKRUPTCY COURT, DISTRICT OF DELAWARE, 824 N. MARKET STREET, WILMINGTON, DELAWARE 19801 BEFORE THE HONORABLE CRAIG T. GOLDBLATT.**

30129786.40

**YOUR RIGHTS MAY BE AFFECTED BY THIS PLAN. YOU SHOULD CONSIDER DISCUSSING THIS DOCUMENT WITH AN ATTORNEY.**

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

As discussed below, the Debtors are engaged in a marketing and sale process to sell all or substantially all of their assets. The net proceeds received by the Debtors upon the closing of such sale(s), among other things, will be used to make payments to holders of Allowed Claims in the order of priority set forth in section 507 of the Bankruptcy Code. Through this Plan, the Debtors also seek approval of the Beyond Risk Settlement, pursuant to which Beyond Risk has agreed to (i) waive recovery from the Debtors on account of the Beyond Risk Intercompany Claims in the amount of approximately $1.8 million, (ii) waive recovery from the Debtors on account of DIP Claims up to an aggregate amount of $1.5 million, (iii) accept treatment of Claims under the DIP Credit Agreement in excess of $1.5 million, if any, as Allowed General Unsecured Claims, and (iv) fund the Liquidating Trust in the amount of $200,000 (the "Liquidating Trust Funding Amount"). Beyond Risk also agreed to waive the DIP Lender's entitlement to a pro rata share of distributions on account of its General Unsecured Claim up to the aggregate amount of the Liquidating Trust Funding Amount. In exchange, and subject to approval of this Plan, the Debtors agreed to the Debtor release set forth in Section 5.1 below and to use reasonable efforts to seek the approval of the third party releases set forth in Section 5.2 below, subject to the opt-out procedures set forth therein. The Beyond Risk Settlement provides consideration fundamental to the success of this Plan, including a recovery to holders of General Unsecured Claims and the beneficiaries of the Health Benefit Plans.

Following the Effective Date of the Plan, including consummation of the Beyond Risk Settlement, Holders of Administrative Claims, Priority Tax Claims, Other Secured Claims, and Other Priority Claims will be paid in full. The Debtors' remaining assets, including the Retained Causes of Action, will be transferred to the Liquidating Trust for the benefit of Holders of General Unsecured Claims.

The Debtors, in consultation with the Subchapter V Trustee, selected William A. Homony to act as the administrator and trustee of the Liquidating Trust pursuant to the Liquidating Trust Agreement. Mr. Homony currently serves as the Subchapter V Trustee.

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

A summary of the Classes of Claims and Interests and their treatment under this Plan are displayed in the chart below.

**SUMMARY OF STATUS**

| Class | Claim/Interest | Status | Projected or Agreed Recovery Under the Plan by Debtor |
|---|---|---|---|
| N/A | DIP Claims | Not classified | **Arsenal Intermediate:** Pursuant to the Beyond Risk Settlement, Beyond Risk agrees to waive its recovery from the Debtors on account of the DIP Claims |
| | | | **Arsenal Health:** Pursuant to the Beyond Risk Settlement, Beyond Risk agrees to waive its recovery from the Debtors on account of the DIP Claims |
| | | | **Arsenal Insurance:** Pursuant to the Beyond Risk Settlement, Beyond Risk agrees to waive its recovery from the Debtors on account of the DIP Claims |
| N/A | Administrative Expenses, excluding DIP Claims and Professional Fee Claims | Not classified | **Arsenal Intermediate:** 100% |
| | | | **Arsenal Health:** 100% |
| | | | **Arsenal Insurance:** 100% |
| N/A | Professional Fee Claims | Not classified | **Arsenal Intermediate:** 100% |

| Class | Claim/Interest | Status | Projected or Agreed Recovery Under the Plan by Debtor |
|---|---|---|---|
| | | | **Arsenal Health:** 100% |
| | | | **Arsenal Insurance:** 100% |
| N/A | Priority Tax Claims | Not classified | **Arsenal Intermediate:** 100% |
| | | | **Arsenal Health:** 100% |
| | | | **Arsenal Insurance:** 100% |
| 1 | Other Secured Claims | Unimpaired | **Arsenal Intermediate:** 100% |
| | | | **Arsenal Health**: 100% |
| | | | **Arsenal Insurance:** 100% |
| 2 | Priority Non-Tax Claims | Unimpaired | **Arsenal Intermediate:** 100% |
| | | | **Arsenal Health:** 100% |
| | | | **Arsenal Insurance:** 100% |
| 3 | Beyond Risk Intercompany Claims | Impaired | **Arsenal Intermediate:** N/A |
| | | | **Arsenal Health:** Pursuant to the Beyond Risk Settlement, Beyond Risk agrees to waive its recovery from the Debtors on account of the Beyond Risk Intercompany Claims |

| Class | Claim/Interest | Status | Projected or Agreed Recovery Under the Plan by Debtor |
|---|---|---|---|
| | | | **Arsenal Insurance:** Pursuant to the Beyond Risk Settlement, Beyond Risk agrees to waive its recovery from the Debtors on account of the Beyond Risk Intercompany Claims |
| 4 | General Unsecured Claims[2] | Impaired | **Arsenal Intermediate:** Recovery: 5-25% |
| | | | **Arsenal Health:** Recovery: 0-25% |
| | | | **Arsenal Insurance:** Recovery: 5-25% |
| 5 | Intercompany Claims | Impaired | **Arsenal Intermediate:** 0% |
| | | | **Arsenal Health:** 0% |
| | | | **Arsenal Insurance:** 0% |
| 6 | Interests | Impaired | **Arsenal Intermediate:** 0% |
| | | | **Arsenal Health:** 0% |

---

[2]    There are a number of factors that could affect the percentage of recovery to holders of General Unsecured Claims, such as the fact that the Bar Date has not yet passed.  In addition, it is possible that additional contingent, unliquidated, and disputed claims will be asserted against the Debtors. The Debtors also hold various litigation claims that will be assigned to the Liquidating Trust for the benefit of holders of General Unsecured Claims. Moreover, the Liquidating Trustee will decide, in its sole discretion, whether to use all or a portion of the Liquidating Trust Funding Amount (other than the funds deposited in the Health Care Fiduciary Account) to pursue litigation claims or make distributions to General Unsecured Creditors.  Given the uncertainty due to the aforementioned items, the analysis of the percentage of recovery to holders of General Unsecured Claims is currently an estimate that may be lower or higher than set forth in the Plan.

| Class | Claim/Interest | Status | Projected or Agreed Recovery Under the Plan by Debtor |
|---|---|---|---|
| | | | **Arsenal Insurance:** 0% |

# ARTICLE 1
## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTORS

### 1.1   Nature and History of the Debtors' Business.

The Debtors' business (the "Company") was founded in 2006 as an independent captive management and alternative-risk manager.  It provides customer solutions in risk management for captive insurance companies and various other insurance entities through its office location in Alabama. Previously, the Company also had a presence in Georgia, Florida, Tennessee, Texas, and Vermont.

The services offered by the Company include, among other things: (i) providing formation and licensure of captives; (ii) managing captives; (iii) interacting with various state regulators; (iv) managing third party administrators; (v) conducting conferences, seminars, and training sessions for various insurance professionals and regulators; and (vi) managing underwriting and enrollment services for health plans and risk pools.

Debtors Arsenal Insurance and Arsenal Health (together, "Arsenal") are both operating entities and provide different types of services to their customers.  Arsenal Insurance assists with the formation and management of captive insurance companies (primarily in the single-parent captive end market) for property and casualty risks, as well as risk retention groups, and managing risk pools.  Arsenal Health administers or has arranged for the administration of self-funded employee benefits programs for its health plan sponsor customers.  Debtor Arsenal Intermediate is a holding company.

On December 23, 2021, Arsenal was acquired by BR Intermediate, a Delaware limited liability company.  BR Topco and each of its non-Debtor direct and indirect subsidiaries, including BR Intermediate, is part of Beyond Risk, a Delaware enterprise of entities that provide, *inter alia*, independent risk management solutions.  As discussed below, BR Intermediate provided DIP financing to the Debtors to support the Chapter 11 Cases and the Debtors' sale and plan process.

Additional background regarding the services provided by each Debtor is set forth in the *Declaration of Michael Wyse in Support of Chapter 11 Petitions and First Day Motions* [D.I. 2] (the "First Day Declaration").

### 1.2   Litigation by Beyond Risk Related to the Acquisition of Arsenal.

On January 26, 2023, BR Topco and BR Intermediate (together, the "Plaintiffs") commenced the Delaware Action against Norman Chandler, Lansera, Inc., Atlantis Group, LLC, and Justin Law (collectively, the "Defendants") in the Delaware Chancery Court seeking damages

for contractual indemnification, fraud, and aiding and abetting fraud arising out of the Defendants' alleged conduct, including making or aiding materially false and misleading statements designed to induce the Plaintiffs to acquire Arsenal.

In the Delaware Action, the Plaintiffs allege that, contrary to representations made in the purchase agreement, Arsenal, while under prior management, misled its clients concerning the nature of its health plan offerings, underpriced the premiums and monthly contributions for those health plans, and failed to abide by its contractual, statutory, and regulatory obligations. The Plaintiffs allege that the Defendants concealed deficits that had accrued in the health plans. Following the acquisition, a number of Arsenal Health's largest clients terminated their relationships with Arsenal, and Arsenal was ultimately forced to terminate its agreement with Iron Reinsurance Company, Inc. ("Iron Re"), the medical stop-loss insurer for most of Arsenal Health's health plan clients, due to Iron Re's failure to pay amounts owed thereunder and failure to provide material information as required by their agreement.

After these alleged misrepresentations were discovered, on October 18, 2022, Chandler and Law were terminated for cause from their positions as officers of Arsenal. Arsenal worked expeditiously to prevent any further wrongdoing, including by ceasing underwriting of new and renewal medical stop loss insurance coverages to clients due to the underfunded status of the carrier, terminating its relationship with Iron Re, and working to minimize the economic impact to health plan sponsors and employees and other clients.

The allegations related to the mismarketing of health plan offerings are more fully set forth in the Complaint filed in the Delaware Action. A public version of the Complaint can be accessed at the Debtors' case website at https://cases.ra.kroll.com/AIH/ under "Quick Links" and "Beyond Risk – Verified Complaint."

### 1.3    Filing of the Debtors' Chapter 11 Cases.

Due to the alleged mismanagement and misrepresentations of former management discussed above, the Debtors have steadily lost customers and revenue over the past year. Since January 2022, the Debtors' monthly revenue declined from approximately $474,000.00 in January to approximately $77,000.00 in December 2022. Over the past year, the Debtors lost approximately ninety-five percent of their customers. Without the revenue to support their staff, the Debtors had no choice but terminate approximately sixty-two percent of their employees in 2022. The Debtors' business has not been profitable for nearly a year.

Given the deteriorating financial and cash position of the Debtors, it became apparent that a bankruptcy process was necessary. In December 2022, Mr. Michael Wyse was appointed as Debtors' Chief Restructuring Officer and delegated the authority to direct the day-to-day management of the Debtors' restructuring efforts, to manage cash forecasting and liquidity management procedures in connection therewith, to market the Debtors' assets for sale, to independently negotiate the terms of any debtor-in-possession financing, and to independently evaluate a potential settlement with Beyond Risk, among other things.

On January 26, 2023, the Debtors each filed a voluntary petition for relief under the Bankruptcy Code and elected to proceed under subchapter V of chapter 11 of the Bankruptcy

Code. The commencement of a chapter 11 case creates an estate that consists of all the legal and equitable interests of the debtor as of that date. The Bankruptcy Code provides that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession." The Debtors have continued to operate their businesses and manage their properties as debtors and debtors in possession. By order entered on January 27, 2023 [D.I. 27], the Chapter 11 Cases are being jointly administered for procedural purposes only. No trustee or examiner has been appointed in the Chapter 11 Cases. On January 26, 2023, the U.S. Trustee appointed William A. Homony as the Subchapter V Trustee in these Chapter 11 Cases.

On the Petition Date, the Debtors filed, among other things, various motions and an application (collectively, the "First Day Pleadings") designed to ease the Debtors' transition into chapter 11 and provide financing for the Chapter 11 Cases. The Debtors filed a motion seeking authority to jointly administer the Chapter 11 Cases to ease the administrative burden on the Debtors, the Bankruptcy Court, and other parties in interest [D.I. 3]. The Debtors also filed an application to employ Kroll Restructuring Administration, LLC ("Kroll") as their claims and noticing agent to enable Kroll to expeditiously serve the Debtors' creditor matrix and other notice parties with various notices, motions, pleadings, and orders, among other things [D.I. 4]. Additionally, the Debtors filed other routine operational motions to, among other things, enable the Debtors to pay taxes that had accrued and were payable after the Petition Date [D.I. 5], provide their utility company with adequate assurance of payment [D.I. 6], pay their insurance premiums in the ordinary course of business as required by law and the U.S. Trustee's guidelines [D.I. 7], continue using their bank accounts in the ordinary course of business [D.I. 8], and fund payroll and employee benefits in the ordinary course of business to ensure that employees were assured that they would receive their ordinary compensation and benefits during the pendency of these Chapter 11 Cases [D.I. 9]. As discussed more fully below, through the DIP Motion, the Debtors sought authority to obtain financing in an interim amount of $550,000 and a final amount of $2.25 million [D.I. 10]. The total available DIP financing was later increased to $3.0 million through an amendment to the DIP Credit Agreement [D.I. 236].

On January 27, 2023, the Court granted the First Day Pleadings on an interim basis. *See* [D.I. 27, 30, 31, 32, 33, 34, 35 & 36]. The Court granted the relief sought in the operational First Day Pleadings on a final basis on February 15, 2023 [D.I. 77, 78 & 79], February 17, 2023 [D.I. 86], and February 22, 2023 [D.I. 87]. The Court entered an order granting the DIP Motion on a second interim basis on February 1, 2023 [D.I. 53], on a third interim basis on February 24, 2023 [D.I. 110], and on a final basis on March 13, 2023 [D.I. 139].

The Court also granted the Debtors' motion to reject an office lease and certain executory contracts, effective as of the Petition Date, on February 17, 2023. [D.I. 82].

### 1.4     Legal Structure and Ownership.

Arsenal Intermediate is wholly-owned by non-debtor BR Intermediate. Arsenal Insurance and Arsenal Health are wholly-owned by Arsenal Intermediate.

### 1.5     Debtors' Assets.

As of the date hereof, the Debtors' assets are comprised of certain intellectual property, customer contracts, accounts receivable, deposits and prepayments, causes of action, interests in insurance policies, office furniture, equipment, fixtures, and other assets.  As set forth in detail in the Bidding Procedures and Sale Motion, the Debtors are currently marketing their assets and engaged in a Sale Process to sell all or substantially all of the assets of Arsenal Health and Arsenal Insurance pursuant to section 363 of the Bankruptcy Code.  Through the Chapter 11 Cases and the Sale Process, the Debtors' paramount goal is to maximize the value of their Estates for the benefit of their creditor constituencies and other stakeholders, while providing customers with an orderly transition of services to a third party manager(s).

As set forth in Arsenal Intermediate's Schedules, Arsenal Intermediate is a holding company and has no assets.  *See* **Exhibit A**.

As set forth in Arsenal Insurance's Schedules, Arsenal Insurance has assets consisting of personal property estimated in the amount of $297,382.91, not including undetermined amounts. These assets consist of deposits and prepayments in the amount of $79,459.49, accounts receivable in the amount of $112,400.50, and office furniture, fixtures, and equipment in the amount of $27,563.81.  Arsenal Insurance also has intellectual property consisting of its domain names, including arsenalrmi.com and ironrehealth.com, the value of which is currently undetermined. *See* **Exhibit A**.

As set forth in Arsenal Health's Schedules, Arsenal Health's assets are valued in an undetermined amount.  Prior to the Petition Date, Arsenal Health commenced an action in the Circuit Court of Montgomery County, Alabama, Case Number CV-2021-900256.00 (the "McCain Ashurst Litigation"), against various defendants seeking damages and injunctive relief for misappropriation of trade secrets, breaches of fiduciary duty, intentional interference with business relations, trademark infringement, unfair competition, trademark dilution, disparagement and tortious interference. The value of Arsenal Health's interest in the McCain Ashurst Litigation is currently undetermined.  *See* **Exhibit A**.

The Arsenal Debtors may also have various causes of action (i) under Chapter V of the Bankruptcy Code, (ii) related to the conduct of former management and related parties, (iii) related to contractual or other business relationship parties, and (iv) other claims, credits, reimbursements, offsets, recoupments and other causes of action, and the value of each of the foregoing is undetermined at this time.

### 1.6     Debtors' Liabilities.

Arsenal Intermediate is the borrower under the DIP Credit Agreement pursuant to which it has a liability in the amount of up to $3.0 million plus accrued and unpaid interest.  The Arsenal Debtors are guarantors under the DIP Credit Agreement.  In addition, the Arsenal Debtors owe approximately $1.8 million to certain non-debtor affiliates as a result of certain intercompany transfers.

Other than Arsenal Intermediate's liability under the DIP Credit Agreement, Arsenal Intermediate has no liabilities. *See* **Exhibit A**. As of the date hereof, Arsenal Intermediate has been authorized to borrow up to $3.0 million under the DIP Credit Agreement.

As set forth in Arsenal Insurance's Schedules, Arsenal Insurance has liabilities estimated in the amount of $910,497.97, not including contingent, unliquidated, and undetermined amounts. *See* **Exhibit A.**

Arsenal Health's liabilities are contingent, unliquidated, and undetermined amounts. *See* **Exhibit A.**

### 1.7    Current and Historical Financial Conditions.

As of December 31, 2022, the Debtors' assets, as listed on their consolidated unaudited balance sheet, were worth negative $351,080.00, which was comprised of negative $2,775.00 in cash, $112,401.00 in accounts receivable, $89,390.00 in prepaid expenses and other assets, $159,744.00 in property and equipment, and a negative $709,840.00 of intercompany transfers. On the date thereof, the Debtors' liabilities included $235,709.00 in accounts payable, $326,778.00 in accrued liabilities, $137,495.00 in liabilities with respect to their office lease, and other liabilities in an amount of $137,495.00, for a total of $699,982.00 in liabilities as of December 31, 2022. *See* **Exhibit B**. As reflected in the Debtors' consolidated balance sheet, the value of the Debtors' assets as of 2022's year-end stand in stark contrast to the value of the Debtors' assets at 2021's year-end, due to a write off of $45,345,561.00 of good will and intangible assets as a result of the events discussed in Section 1.2 above.

The Debtors each filed a monthly operating report ("MOR") on February 23, 2023 and March 1, 2023 for the last four days of January 2023. [D.I. 107, 108 & 118]. As set forth in Arsenal Intermediate's MOR, Arsenal Intermediate's assets as of the end of January consisted of $231,325 of cash on hand after receipt of $250,000 under the DIP Facility and disbursing $18,674.61 on account of payroll. As of the end of January, Arsenal Health's only assets consisted of intercompany transfers and prepaid expenses in the amount of $448,881 and $4,002, respectively. Its liabilities reflect $188,417 in liabilities subject to compromise. Arsenal Insurance's current assets at the end of January 2023 were $321,707.00, with a negative balance showing for non-current assets on account of the Debtors' draw under the DIP Facility and certain intercompany debts. Its total liabilities are $278,329.00. *See* **Exhibit C.**

Because the Debtors intend to make all payments required under this Plan from, among other things, Sale Proceeds, recoveries under Retained Causes of Action, and the proceeds from the Beyond Risk Settlement, section 1190(2) of the Bankruptcy Code, which requires the submission of future earnings of the Debtors to the Liquidating Trustee as necessary for execution of the Plan, does not apply.

### 1.8    Significant Events During the Bankruptcy Cases.

As discussed above, on the Petition Date, the Debtors filed various First Day Pleadings seeking operational relief designed to ease their transition into these Chapter 11 Cases. In connection therewith, the Debtors filed the DIP Motion pursuant to which they sought authority to

borrow $2.25 million from the DIP Lender, secured by a Lien on substantially all of the Debtors' assets. On January 27, 2023, the Court granted the DIP Motion on a first interim basis in the amount of $250,000 [D.I. 31], on February 1, 2023, the Court granted the DIP Motion on a second interim basis [D.I. 53] for additional funding in the amount of $300,000, on February 24, 2023, the Court granted the DIP Motion on a third interim basis [D.I. 110] for additional funding in the amount of $630,000, and on March 13, 2023, the Court granted the DIP Motion on a final basis [D.I. 139], for a total funding amount of $2,250,000.00.

On February 6, 2023, the Debtors filed retention applications (the "Retention Applications") to retain and employ: (i) Young Conaway Stargatt & Taylor, LLP as their bankruptcy counsel [D.I. 57]; (ii) Polsinelli PC as their special regulatory counsel [D.I. 58], and (iii) Kroll Restructuring Administration, LLC as their claims and administrative agent [D.I. 59]. Contemporaneously therewith, the Debtors filed a motion to employ Wyse Advisors, LLC to provide the Debtors with a chief restructuring officer and certain additional personnel [D.I. 61]. In addition, the Debtors filed the OCP Motion to employ certain professionals utilized by the Debtors prepetition in the ordinary course of business [D.I. 71]. The Court approved the Retention Applications and the OCP Motion on February 22, 2023 [D.I. 93, 94, 95, 100 & 101].

The Debtors also filed the Bidding Procedures and Sale Motion seeking entry of an order (a)(i) approving bidding procedures relating to the sale of substantially all of their assets, (ii) scheduling an auction for, and a hearing to approve, the sale, (iii) approving notice of the auction and hearing, (iv) approving procedures for assumption and assignment of executory contracts and Unexpired Leases, and (b)(i) approving the sale of their assets free and clear of all liens, claims, and encumbrances, (ii) approving assumption and assignment of executory contracts and Unexpired Leases, and (iii) granting related relief. [D.I. 62]. The Bid Deadline (as defined in the Bidding Procedures and Sale Motion) was scheduled for April 3, 2023. The Debtors did not receive any successful bids by the Bid Deadline and therefore cancelled their auction and the hearing that was scheduled to consider a potential Sale [D.I. 196 & 199].

On February 22, 2023, the Debtors filed the Automatic Stay Motion [D.I. 99], seeking an order temporarily prohibiting medical service providers and their agents from billing, collecting, and/or continuing or commencing any judicial, administrative, or other proceeding against the individual participants that are covered under the Health Benefit Plans previously administered by Arsenal Health. There are hundreds of individuals covered under the Health Benefit Plans, and lawsuits against those covered individuals could occur in approximately twenty-four (24) different states. The Automatic Stay Motion was granted on March 15, 2023 [D.I. 146].

On March 1, 2023, the Debtors filed their Subchapter V Status Report [D.I. 119], detailing the efforts the Debtors have undertaken and will undertake to attain a consensual plan of reorganization, which efforts have culminated in this Plan. The Subchapter V Status Report was presented to the Court at the Debtors' status conference on March 15, 2023.

On March 23, 2023, the Court held oral argument on the issue of whether the Debtors may utilize an Opt-Out Form in connection with the third party releases in section 5.2 of the Plan [D.I. 163, 164 & 165]. On March 27, 2023, the Court issued an opinion [D.I. 176] authorizing the use of an Opt-Out Form subject to certain revisions that were made to the notices of the Confirmation Hearing and the Opt-Out Form prior to service.

The Debtors effectuated service of notices of the Confirmation Hearing, the releases under the Plan, and the Opt-Out Form on March 28, 2023 [D.I. 182, 183 & 184].

On April 28, 2023, the Debtors filed the *Notice of Amendment to DIP Credit Agreement* [D.I. 236], and thereby provided notice that the DIP Credit Agreement was amended to increase the available borrowing under the DIP Facility from $2.25 million to up to $3 million.

The Court will hold the Confirmation Hearing on May 23, 2023 at 10:00 a.m. (ET).

### 1.9    The Proposed Beyond Risk Settlement.

In December 2022, as it became apparent that a bankruptcy filing might be necessary to maximize the value of the Debtors' assets, Michael Wyse was appointed as Chief Restructuring Officer ("CRO") of the Debtors by written consent.  In connection with his role as CRO, Michael Wyse was given independent authority without the consent or direction of the President, the Managing Member or the Board of Managers of Beyond Risk, to, among other things, negotiate the terms of the DIP Facility with Beyond Risk, and to investigate and negotiate the terms of any material agreement or settlement between the Debtors and Beyond Risk. Accordingly, Michael Wyse directed Young Conaway to conduct diligence with respect to Beyond Risk, including an investigation into potential claims and causes of action (the "BR Investigation"). The BR Investigation was critical to determine whether or to what extent any claims or causes of action against Beyond Risk or its representatives may bring value to the Debtors and their Estates and/or whether any releases were appropriate under any chapter 11 plan in these Chapter 11 Cases.

To that end, the CRO directed Young Conaway to investigate potential claims that the Debtors might hold against Beyond Risk and their officers, including officers who also serve in officer positions for the Debtors.  The investigation broadly included diligence on Beyond Risk meant to determine the scope of all potential claims, but ultimately focused on the following types of claims:  breach of the duty of loyalty and care, fraudulent transfer or conveyance under section 548 of the Bankruptcy Code, state and common law, intentional interference with business relations, preference payments under section 547 of the Bankruptcy Code, and any other actions that might give rise to claims, such as re-characterization.

In furtherance of the claims analysis investigation, Young Conaway received and reviewed numerous documents for the period between Beyond Risk's acquisition of Arsenal on December 23, 2021 and the Petition Date as well as certain documents preceding Beyond Risk's acquisition.  These documents included, among other things, (i) minutes of meetings of BR Topco's Board of Managers; (ii) emails about various issues spanning the year preceding the Petition Date; (iii) organizational documents; (iv) the Debtors' marketing materials; (v) the Beyond Risk Unit Purchase Agreement; (vi) the complaint filed in the Delaware Action and the materials underlying that complaint; (vii) financial reports provided to Beyond Risk by the Debtors during diligence prior to the acquisition; (viii) various contracts by and among the Debtors and Iron Re; and (ix) various documents concerning former management.  Young Conaway, on behalf of the CRO, reviewed each responsive document.

In addition to a review of documents, Young Conaway interviewed five members of BR Topco's and the Debtors' upper management, including the President, the CFO, the general counsel, and other senior officers.  Interviewees were asked a number of questions to help determine whether the Debtors might hold claims against any applicable third parties, including its managing member, or against its officers, for the period from the acquisition to the present. Interviewees were questioned on, as applicable, financial transactions, conflict issues, Beyond Risk's response to certain matters involving the Department of Labor, regulatory compliance and performance, the Debtors' management and corporate governance, and numerous other topics.

Based on the review of documents provided to the CRO and the interviews completed by Young Conaway, the CRO did not uncover any facts, documents, evidence, or circumstantial evidence to support any material claims or causes of action that the Debtors may have against Beyond Risk, or any of its related officers, managers, or related parties arising during the period from the acquisition to the present except for the potential recharacterization of the Beyond Risk Intercompany Claims from debt to equity with respect to amounts that Beyond Risk funded through certain intercompany transactions to support the Debtors since the acquisition. Beyond Risk refutes this allegation, but nonetheless is entering into the Beyond Risk Settlement.

After the claims analysis investigation concluded, the CRO and Beyond Risk began negotiating the terms of the Beyond Risk Settlement as embodied in this Plan.

After weeks of arms'-length negotiations, Beyond Risk and the Debtors agreed to the terms of the Beyond Risk Settlement.  Pursuant to the Beyond Risk Settlement, Beyond Risk agreed to (i) waive any recovery from the Debtors on account of the Beyond Risk Intercompany Claims, (ii) waive its recovery from the Debtors on account of the DIP Claims up to an aggregate amount of $1.5 million, (iii) accept treatment of any Claims under the DIP Credit Agreement in excess of $1.5 million as Allowed General Unsecured Claims, and (iv) fund the Liquidating Trust in the amount of $200,000.  Beyond Risk also agreed to waive the DIP Lender's entitlement to a pro rata share of distributions on account of its General Unsecured Claim up to the aggregate amount of the Liquidating Trust Funding Amount.

In exchange for the aforementioned consideration, the Debtors have agreed to provide Beyond Risk and Beyond Risk Related Parties with the releases set forth in section 5.1 of the Plan and to seek Court approval of the third party releases set forth in Section 5.2 of the Plan, with such third party releases subject to an opt-out by holders of Claims or Interests.

### 1.10    Projected Recovery of Avoidable Transfers.

The Debtors have not yet completed investigating prepetition transactions, other than with respect to Beyond Risk.  Any claims and causes of action not released under this Plan shall be transferred to the Liquidating Trust for the benefit of the Debtors' Creditors. If you received a payment or other transfer of property within 90 days of bankruptcy, the Debtors may seek to avoid such transfer, except that no such preference actions will be commenced against any Health Benefit Plan or any successor, sponsor, participant, or beneficiary of such Health Benefit Plan.

# ARTICLE 2
# THE PLAN

The Debtors' Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a Class for purpose of payment. For example, the Administrative Expenses, Professional Fee Claims, and Priority Tax Claims are not classified. The DIP Lender's DIP Claims under the DIP Credit Agreement are not classified either.

As required by the Bankruptcy Code, this Plan places Claims and Interests in various Classes and describes the treatment each Class will receive. The Plan also states whether each Class of Claims or Interests is Impaired or Unimpaired. A Claim or Interest will be deemed Impaired if this Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If this Plan is confirmed, each Creditor's recovery is limited to the amount provided in this Plan.

The Debtors do not intend to solicit acceptances of this Plan, and there will therefore be no voting. The Debtors will treat all Classes under the Plan as rejecting the Plan, except those that consent or are deemed to consent or accept.

## 2.1    Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code. For example, Administrative Expenses and Priority Tax Claims are not classified and are Unimpaired. They may object if, in their view, their treatment under this Plan does not comply with that required by the Bankruptcy Code; *provided, however,* that nothing herein shall constitute a waiver by the Debtors or Beyond Risk of either such party's right to contest the standing of any holder of any Claim or Interest to object to confirmation of the Plan. This Plan does not place the following Claims in any class:

A.    *DIP Claims*

In exchange for the releases in Article 5 of this Plan, and subject to the approval of the Beyond Risk Settlement, the DIP Lender will waive its recovery from the Debtors on account of liability under the DIP Credit Agreement, including the DIP Claims, up to an aggregate amount of $1.5 million. Any amounts owed pursuant to the DIP Credit Agreement in excess of $1.5 million shall be treated as Allowed General Unsecured Claims.

B.    *Administrative Expenses*

The Debtors must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtors and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment

will be made after the Administrative Expense is allowed by the Bankruptcy Court.  Any claims for the payment of an Administrative Expense must be filed by the Administrative Claim Bar Date.

There are several types of Administrative Expenses including, but not limited to, the following:

1.    If the Debtors trade in the ordinary course of business following its filing of the Chapter 11 Cases, Creditors are entitled to be paid in full for the goods or services provided.  This ordinary trade debt incurred by the Debtors after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtors and its trade Creditors.

2.    Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Subchapter V Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtors during the course of the Chapter 11 Cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtors' estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $100,000.00 | Paid in full on or prior to the Effective Date. |
| Administrative Tax Claim | $0.00 | Paid in full on or prior to the Effective Date. |
| Professional Fee Claims, as approved by the Bankruptcy Court | $1,430,000.00[3] | Paid in full after such fees are Allowed by the Bankruptcy Court. |
| Clerk's Office fees | $5,214.00 | Paid in full prior to the Effective Date. |

---

[3]    This amount assumes that the Professional Fee Claims will be paid in accordance with the Interim Compensation Procedures Order such that the outstanding balance of estimated Professional Fee Claims on the Effective Date will be approximately $1,400,000.00.  This number is subject to change based on the services required in the Chapter 11 Cases.

| Other Administrative Expenses | $0.00 | Paid in full on the Effective Date. |
|---|---|---|
| Subchapter V Trustee | $35,000.00 | Paid in full after such fees are Allowed by the Bankruptcy Court. |
| **TOTAL** | $1,570,214.00 | |

C.    *Professional Fees*

1.    Final Fee Applications

All requests for payment of Professional Fee Claims by Professionals (other than OCPs) for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed no later than forty-five (45) days after the Effective Date.   Objections to Professional Fee Claims must be filed and served no later than fourteen (14) days after the filing of the Professional Fee Claim. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims of Professionals (other than OCPs) after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  Unless otherwise agreed to by the Debtors and the Professional, the Liquidating Trustee shall pay Professional Fee Claims that are Allowed by Final Order following the Effective Date in Cash from the Professional Fee Reserve.

2.    Administrative Claims of OCPs

All requests for payment of Professional Fee Claims of OCPs shall be made pursuant to the OCP Order. To the extent any Professional Fee Claims of the OCPs have not been Allowed pursuant to the OCP Order on or before the Effective Date, the amount of Professional Fee Claims owing to the OCPs shall be paid in Cash to such OCPs by the Debtors or the Liquidating Trustee (as applicable) from the Professional Fee Reserve as soon as reasonably practicable after such Professional Fee Claims are Allowed pursuant to the OCP Order.

3.    Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Liquidating Trustee shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to the Chapter 11 Cases that are incurred after the Effective Date. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code or the OCP Order in seeking retention or compensation for services rendered after such date shall terminate, and the Liquidating Trustee may employ and pay any retained professionals in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Code.

4.      Professional Fee Reserve Amount

Unless otherwise agreed to prior to the Effective Date by the Debtors and the applicable Professional, to receive payment for unbilled fees and expenses incurred through the Effective Date, the Retained Professionals shall estimate their accrued Professional Fee Claims prior to and as of the Effective Date, and shall deliver such estimate to the Debtors and their counsel no later than five (5) days prior to the Effective Date (the "Professional Fee Reserve Amount"); *provided* that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional.  If a Professional does not provide an estimate, the Debtors may estimate the unbilled fees and expenses of such Professional. The total amount so estimated hereunder as of the Effective Date shall comprise the "Professional Fee Reserve Amount."

5.      Professional Fee Reserve

The Professional Fee Reserve Amount shall be deposited into the Professional Fee Reserve on the Effective Date and the Liquidating Trustee is charged with administering the Professional Fee Reserve Amount to the appropriate Professionals.  Any balance remaining in the Professional Fee Reserve after Allowed Professional Fee Claims are paid in full shall be returned to Beyond Risk within five (5) business days following the payment of such Allowed Professional Fee Claims.

The Professional Fee Reserve and amounts funded therein are and shall continue to be maintained in trust solely for each Professional.  Such funds shall not be considered property of the Debtors, their Estates, or the Liquidating Trust.  Unless otherwise agreed to by the Debtors and the Professional, the amount owing to the Professional shall be paid in Cash to such Professional by the Liquidating Trustee from the Professional Fee Reserve as soon as reasonably practicable after such claims are Allowed by order of the Bankruptcy Court.

D.      *Priority Tax Claims*

Priority Tax Claims are defined as unsecured income, employment, and other taxes as described by § 507(a)(8) of the Bankruptcy Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The Debtors do not believe there are any outstanding Priority Tax Claims because all such claims were paid in accordance with the Bankruptcy Court's order authorizing the Debtors to pay prepetition taxes and fees on a final basis [D.I. 77].

**2.2      Classes of Claims and Interests.**

The following are the Classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.      *Classes of Other Secured Claims*

Secured Claims are Claims secured by property of the Debtors' Estates (or that are subject to setoff) to the extent allowed as Secured Claims under § 506 of the Bankruptcy Code ("Allowed

Secured Claim"). If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a General Unsecured Claim.

Upon information and belief, the Debtors do not believe there are any Allowed Other Secured Claims in Class 2.

### B.    Classes of Priority Non Tax Claims

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code are required to be placed in classes. The Bankruptcy Code requires that each holder of such a Claim receive Cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a Class of holders of such Claims may vote to accept different treatment.

Upon information and believe, the Debtors believe that all Priority Non-Tax Claims were paid in accordance with the Bankruptcy Court's order authorizing the Debtors to pay employee wages and benefits on a final basis [D.I. 87] and that no such claims will be outstanding on the Petition Date.

### C.    Beyond Risk Intercompany Claims

Beyond Risk Intercompany Claims are Claims that Beyond Risk holds against the Debtors for certain prepetition transfers in the amount of approximately $1.8 million. Pursuant to the Beyond Risk Settlement, upon the Effective Date, Beyond Risk will waive any recovery from the Debtors on account of the Beyond Risk Intercompany Claims.

The following chart identifies the Plan's proposed treatment of Class 3, which contains Beyond Risk Intercompany Claims against the Debtors:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 3 | Beyond Risk Intercompany Claims | Impaired | On the Effective Date, holders of the Beyond Risk Intercompany Claims shall waive any and all recovery from the Debtors on account of such Beyond Risk Intercompany Claims. |

### D.    Class of General Unsecured Claims

General Unsecured Claims are not secured by property of the Estate and are not entitled to priority under § 507(a) of the Bankruptcy Code.

The following chart identifies the Plan's proposed treatment of Class 4, which contains General Unsecured Claims against the Debtors:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 4 | General Unsecured Claims | Impaired | Unless the holder of a Class 3 General Unsecured Claim agrees to different treatment, each holder of an Allowed General Unsecured Claim shall receive its pro rata share of the GUC Distribution Amount. |

    *E.*    *Intercompany Claims*

Intercompany Claims are Claims held by one Debtor against another Debtor.

The following chart sets forth the Plan's proposed treatment of Class 5, which contains the Intercompany Claims:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 5 | Intercompany Claims | Impaired/Deemed to Reject | On the Effective Date, all Intercompany Claims shall be cancelled and discharged, with the holders of such Intercompany Claims receiving no distribution on account of such Intercompany Claims. |

    *F.*    *Class of Interest Holders*

Interest holders are parties who hold an ownership interest in the Debtors. In a limited liability company ("LLC"), the interest holders are the members of the LLC.

The following chart sets forth the Plan's proposed treatment of Class 6, the Class of Interest holders:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 6 | Interest Holders | Impaired/Deemed to Reject | On the Effective Date, all Interests in the Debtors shall be extinguished as of the Effective Date, and the owners thereof shall receive no distribution on account of such Interest. |

### 2.3 Estimated Number and Amount of Claims Objections.

The Liquidating Trustee may object to the amount or validity of any Claim within six (6) months of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtors will pay the Allowed Claim in accordance with the Plan.

As of the date hereof, one hundred and thirty-five (135) Claims have been filed against the Debtors. The Debtors reserve all rights to object to the amount or validity of any Claim filed to the fullest extent permitted by law.

There may be duplicative Claims filed by, among others, the Department of Labor and the beneficiaries of Health Benefit Plans with respect to Health Benefit Plans. Any such duplicative Claims will be addressed by the Liquidating Trustee in connection with the Claims reconciliation process.

### 2.4 Treatment of Executory Contracts and Unexpired Leases.

#### A. Assumption and Assignment in General

Executory Contracts are contracts where significant performance of the contract remains for both the Debtors and the contract counterparty. The Debtors have the right to reject, assume (*i.e.*, accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval.

Assumption and assignment by the Debtors means that the Debtors will undertake the obligations under such contracts and Unexpired Leases, will cure defaults of the type that must be cured under the Bankruptcy Code, if any, and will assign the contract to another party.

30129786.40

21

Rejection means that the Debtors have elected not to continue to perform the obligations under such contracts or leases.  If the Debtors have elected to reject a contract or lease, the other party to the contract or lease will be treated as a General Unsecured Creditor holding a Claim that arose before the Chapter 11 Cases were filed.

If you object to the assumption of your Unexpired Lease or Executory Contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

As set forth in the Bidding Procedures and Sale Motion, the Debtors intend to assume and assign certain Executory Contracts and Unexpired Leases to the prevailing bidder or bidders who acquire the Debtors' assets in connection with the Sale Process.  The determination of which Executory Contracts will be assumed and assigned and which will be rejected is dependent on the outcome of the Sale Process.  Accordingly, in connection with the filing of this Plan, the Debtors have listed all of their Executory Contracts and Unexpired Leases as **<u>Exhibit D</u>** without specifying which will be assumed and assigned and which will be rejected.  After the Sale Process concludes and the prevailing purchaser or purchasers indicate their intent with respect to the Debtors' Executory Contracts and Unexpired Leases, the Debtors will file a schedule of Executory Contracts and Unexpired Leases setting forth the specifics of assumption and assignment and rejection.

**The proposed deadline for filing a Proof of Claim based on a claim arising from the rejection of an Executory Contract is thirty (30) days following the effective date of such rejection**.  Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases or the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Reorganized Debtor has any liability thereunder.

For the avoidance of doubt, any Executory Contract or Unexpired Lease not assumed in connection with the Sale Process or during the Chapter 11 Cases will automatically be rejected upon the Court's entry of the Confirmation Order.

    B.  *Insurance Contracts*

On the Effective Date, to the extent necessary, the Insurance Contracts shall be assumed by the Liquidating Trustee pursuant to sections 105 and 365 of the Bankruptcy Code.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the assumption of each of such Insurance Contracts.

Notwithstanding anything to the contrary in the Plan or the Confirmation Order and any related notices, any Claim objection, or any document related to the foregoing: (a) except as set forth in this Article 2, nothing (i) alters the rights and obligations of the Debtors, their Estates, the Liquidating Trustee, and the insurers under any Insurance Contracts, (ii) modifies the coverage

provided under any Insurance Contract or the terms and conditions thereof, except that, on and after the Effective Date, the Liquidating Trustee shall become and remain liable in full for all of the obligations of the Debtors and their Estates under the Insurance Contracts, regardless of whether such obligations arise before or after the Effective Date and without the need of any insurer to file a proof of Claim or an Administrative Claim, or (iii) affects the insurers' rights and interests in any collateral or security they hold.  For the avoidance of doubt, all rights and obligations under the Insurance Contracts shall be governed by the applicable Insurance Contracts and applicable non-bankruptcy law.

The automatic stay of Bankruptcy Code section 362(a), if and to the extent applicable, shall be deemed modified without further order of the Bankruptcy Court, solely to permit:  (i) claimants with valid workers' compensation claims or with valid direct action claims against an insurer under applicable non-bankruptcy law to proceed with their claims; (ii) insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Court, (a) workers' compensation claims, (b) claims where a claimant asserts a direct claim against any insurer under applicable non-bankruptcy law, or where an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claim, and (c) all costs in relation to each of the foregoing; and (iii) any insurer to draw against any or all of the collateral or security provided by or on behalf of the Debtors, and/or the Liquidating Trust, as applicable, or apply such proceeds to the obligations of the Debtors or the Liquidating Trust, as applicable, under the Insurance Contracts, provided that such insurer shall use commercially reasonable practices in doing so.  For the avoidance of doubt, to the extent that a workers' compensation claim (i) is not (a) payable pursuant to one of the Insurance Contract(s) or (b) paid by a party that is not the Debtors, the Liquidating Trust, or the Liquidating Trustee, and (ii) is an Allowed Claim, such workers' compensation claim shall be treated in a manner consistent with the terms of the Plan.

Each insurer is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering, or delaying coverage solely on any basis regarding or related to the Chapter 11 Cases, the Plan or any provision within the Plan; *provided*, that nothing herein grants or should be deemed to grant any claimant relief from the automatic stay of Bankruptcy Code section 362(a) to proceed with their claims (other than workers' compensation and direct action claims, as provided for herein) without first seeking and receiving relief from the Bankruptcy Court from the automatic stay, to the extent applicable; *provided further*, however, insurers may draw against any or all of the collateral or security provided by or on behalf of the Debtors or the Liquidating Trust, to the extent applicable, at any time and to hold the proceeds thereof as security for the obligations of the Debtors and Liquidating Trust, as applicable, and/or apply such proceeds to the obligations of the Debtors and Liquidating Trust, as applicable, under the applicable Insurance Contracts, in such order as the applicable insurer may determine, and may also take any other actions relating to the Insurance Contracts (including effectuating a setoff or recoupment), to the extent permissible in accordance with applicable non-bankruptcy law or the terms of the Insurance Contracts, provided, however, that the insurers shall return any remaining collateral or security to the Liquidating Trust in accordance with the terms of the Insurance Contracts.

Nothing in the Plan or the Confirmation Order, shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying

(a) the rights or obligations of any insurer, or (b) any rights or obligations of the Debtors or the Liquidating Trust arising out of or under any Insurance Contract. The insurers, Debtors, and Liquidating Trust, as applicable, shall retain all rights and defenses under such Insurance Contracts, and such Insurance Contracts shall apply to, and be enforceable by and against, the insureds, the Debtors, and the Liquidating Trust in the same manner and according to the same terms and practices applicable to the Debtors, as existed prior to the Effective Date. Further, for all issues relating to insurance coverage, the provisions, terms, conditions, and limitations of the Insurance Contracts shall control. For the avoidance of doubt, nothing contained in the Plan or the Confirmation Order shall operate to require any insurer to indemnify or pay the liability for any claim that it would not have been required to pay in the absence of the Plan and Confirmation Order.

**2.5**    **Means for Implementation of the Plan.**

A.    *Transactions Effective as of the Effective Date*

The transactions contemplated by the Plan shall be approved and effective as of the Effective Date, without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtors or any other person or entity.

B.    *No Substantive Consolidation*

The Plan is a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors. The Plan does not provide for the substantive consolidation of the Debtors. Rather, the Plan constitutes a separate Plan proposed by each Debtor, and the classifications set forth in Classes 1 through 6 of the Plan apply to each Debtor. Each Class of Claims and Interests constitutes a separate Class of Claims against, and Interests in, each of the Debtors, as applicable.

The assets belonging to each individual Debtor will be utilized to pay the Claims asserted against that respective Debtor. The Debtors' assets will not be pooled together for distribution purposes and the Claims against each Debtor will not be treated as against a common pool of assets; rather, Claims against a Debtor will remain a Claim solely against that Debtor's assets.

As set forth in detail in the Bidding Procedures and Sale Motion, the Debtors are currently marketing their assets and engaged in a Sale Process to sell all or substantially all of the assets of Arsenal Health and Arsenal Insurance pursuant to section 363 of the Bankruptcy Code. Accordingly, the assets available for distribution to the Debtors' creditors are contingent on the outcome of the Sale Process. Without the benefit of knowing the outcome of the Sale Process, the Debtors cannot represent whether there will be meaningful proceeds to distribute. In the event the Sale Process is unsuccessful, Arsenal Health's Creditors may not receive any recovery unless and until the Liquidating Trustee is successful in recovering proceeds from various causes of action, including litigation against former management. As of the date hereof, the Debtors do not believe there are meaningful assets of Arsenal Health that will be sold as part of the Sale Process. Accordingly, there may be no recovery to holders of General Unsecured Claims against Arsenal Health absent a recovery on account of the Retained Causes of Action by the Liquidating Trust.

### C.    *Closing of Sales and Uses of Cash*

On or before the Effective Date, the Debtors and the prevailing purchasers will have consummated the Sale or Sales, as applicable, pursuant to the terms and conditions of the forthcoming purchase agreements, including, without limitation, selling their assets free and clear of certain liens and encumbrances to the extent set forth in the purchase agreements, and assuming and assigning to the prevailing purchasers certain Executory Contracts and Unexpired Leases.

Any Cash Proceeds from any Sale shall be distributed in accordance with the Plan on the Effective Date.

### D.    *The Beyond Risk Settlement*

On the Effective Date, the Beyond Risk Settlement shall be approved and effective, without the need for any further approvals, and without any requirement for further action by the Debtors or any other person or entity other than as expressly stated in this Plan.

As described in section 1.9 of the Plan, the Beyond Risk Settlement was achieved as a result of the BR Investigation and subsequent arms'-length negotiations. Pursuant to the Beyond Risk Settlement, Beyond Risk has agreed to (i) waive any recovery from the Debtors on account of the Beyond Risk Intercompany Claims, (ii) waive any recovery from the Debtors on account of the DIP Claims up to an aggregate amount of $1.5 million, (iii) accept treatment of any claims under the DIP Credit Agreement in excess of $1.5 million as Allowed General Unsecured Claims, and (iv) fund the Liquidating Trust in the amount of $200,000 (the "<u>Liquidating Trust Funding Amount</u>"), which funding shall be provided on the Effective Date. Beyond Risk also agreed to waive the DIP Lender's entitlement to a pro rata share of distributions on account of its General Unsecured Claim up to the aggregate amount of the Liquidating Trust Funding Amount. For the avoidance of doubt, Beyond Risk's waiver of recovery on account of such Claims against the Debtors shall not affect the liability of any non-Debtor for such Claims or any related indemnification obligations. In exchange, and subject to approval of this Plan, the Debtors agreed to the Debtor Release set forth in Section 5.1 below and to seek the approval of the third party release set forth in Section 5.2 below, subject to the opt-out procedures set forth therein

### E.    *The Liquidating Trust*

On the Effective Date, the Liquidating Trustee and the Debtors shall sign the Liquidating Trust Agreement and cause the Liquidating Trust to accept, on behalf of the beneficiaries thereof, (a) the Liquidating Trust Funding Amount, (b) the Retained Causes of Action, and (c) all other assets of the Estates not subject to a Sale (together with the proceeds thereof, the "<u>Liquidating Trust Assets</u>"), *provided*, *however*, that (i) the Liquidating Trust, with the consent of the Liquidating Trustee, may abandon or otherwise not accept any assets that the Liquidating Trust believes, in good faith, have no value to the Liquidating Trust, and (ii) that portion of the Liquidating Trust Funding Amount that is deposited into the Health Care Fiduciary Account shall not constitute Liquidating Trust Assets. Any assets that are released or that the Liquidating Trust so abandons or otherwise does not accept shall not vest in the Liquidating Trust. As of the Effective Date, all assets vested in the Liquidating Trust and all assets dealt with in the Plan shall

be free and clear of all Liens, Claims, and Interests except as otherwise specifically provided in the Plan or in the Confirmation Order.

The Customer Trust Funds and any other assets of Health Benefit Plans under ERISA are not Liquidating Trust Assets. On the Effective Date or the date when any such funds are transferred, the Liquidating Trust will hold such funds in trust in the Health Care Fiduciary Account for the sole purpose of transferring such funds to the Independent Fiduciary.

The Liquidating Trust will be deemed created and effective without any further action by the Bankruptcy Court or any party, provided that the Debtors and the Liquidating Trustee shall take any further actions each deems reasonably necessary and appropriate to effect the creation of the Liquidating Trust. The Liquidating Trust shall be established for the primary purposes of (a) liquidating the Liquidating Trust Assets (as applicable), (b) making distributions in accordance with the Plan and the Liquidating Trust Agreement, and (c) transferring the Customer Trust Funds and any other funds in the Health Care Fiduciary Account to the Independent Fiduciary, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. Notwithstanding anything to the contrary in the Plan or the Liquidating Trust Agreement, however, the Liquidating Trustee may not bring (or cause any other person, plan, or entity to bring) any causes of action against any of the Released Parties, including, without limitation, any causes of action arising under ERISA.

For the avoidance of doubt, upon completion of the Plan Administration Process, all remaining funds held by the Liquidating Trust, other than the funds in the Health Care Fiduciary Account, shall be distributed pro rata to the holders of General Unsecured Claims.

>F.    *Certain Powers and Duties of the Liquidating Trust and the Liquidating Trustee and the Independent Fiduciary*
>
>i.    *The Liquidating Trustee and the Liquidating Trust*

The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The powers, rights, and responsibilities of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include the authority and responsibility to: (a) receive, manage, invest, supervise, and protect Liquidating Trust Assets; (b) marshall and transfer all Customer Trust Funds into the Health Care Fiduciary Account, and then transfer all such funds in the Health Care Fiduciary Account to the Independent Fiduciary; (c) pay taxes or other obligations incurred by the Liquidating Trust; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of Liquidating Trust Assets; (d) calculate and implement distributions of Liquidating Trust Assets; (e) prosecute, compromise, and settle, in accordance with the specific terms of the Liquidating Trust Agreement, Retained Causes of Action; (f) resolve issues involving Claims and Interests; and (g) undertake all administrative functions of the Chapter 11 Cases, including the ultimate closing of the Chapter 11 Cases. The Liquidating Trust is the successor to the Debtors, the Estates, and the Debtors' rights to books and records.

On the Effective Date, the Liquidating Trust shall also have the power, right, and responsibility to wind down the Debtors' Estates and to take possession of all books, records, and files of the Debtors and the Estates and provide for the retention and storage of such books, records, and files until such time as the Liquidating Trust determines, in accordance with the Liquidating Trust Agreement, that retention of same is no longer necessary or required.

In no event later than three (3) months after following the Effective Date and on a quarterly basis thereafter until all Cash has been released or paid out in accordance with the Plan, the Liquidating Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients, and dates of all distributions made by the Liquidating Trustee under the Plan through each applicable reporting period.

### ii.  The Independent Fiduciary

As will be more fully set forth in the Liquidating Trust Agreement, the Plan contemplates that the Department of Labor, with the assistance of the Liquidating Trustee, to the extent reasonably requested, shall bring an action in a federal district court of competent jurisdiction to appoint an independent fiduciary for the Health Benefit Plans. The Independent Fiduciary will have the responsibility, among others, for distributing the Customer Trust Funds and any other funds transferred from the Health Care Fiduciary Account

### iii.  Payment of Fees and Expenses of the Liquidating Trust

All expenses incurred by the Liquidating Trust, including the fees and expenses of the Liquidating Trustee, shall be the responsibility of and paid by the Liquidating Trust, in accordance with the Liquidating Trust Agreement. The Liquidating Trust shall be funded from the Debtors' remaining Cash on hand as of the Effective Date and the proceeds of the Beyond Risk Settlement and any proceeds, other than Customer Trust Funds, from the Retained Causes of Action assigned to the Liquidating Trust.

The Liquidating Trust Funding Amount shall be split equally between the Health Care Fiduciary Account and the Liquidating Trustee.

### G.  Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

**2.6**      **Payments.**

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Liquidating Trustee pursuant to §1194(a).  Once the Subchapter V Trustee's service is terminated under § 1183(c), the Debtors shall make Plan payments except as otherwise provided in the Plan or in the Confirmation Order.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Liquidating Trustee shall make all Plan payments to Creditors under the Plan.

**2.7**      **Tax Consequences of the Plan.**

*CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND ADVISORS.  THE BELOW TAX SUMMARY HAS BEEN PROVIDED FOR GENERAL INFORMATIONAL PURPOSES ONLY.  THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX.  NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE.  THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES.*

The following discussion summarizes certain United States federal income tax consequences of the Plan to the Debtors and to certain holders of Claims.  This discussion is based on the IRC, the Treasury Regulations promulgated thereunder, judicial decisions, and published administrative rulings and pronouncements of the IRS, all as in effect on the date hereof.  Legislative, judicial, or administrative changes in law or its interpretation, as well as other events occurring after the date of this Disclosure Statement, and which may be retroactive, could materially alter the tax treatment described below.  Furthermore, this discussion is not binding on the IRS or any other tax authority.  There is no assurance that a tax authority will not take, or that a court will not sustain, a position with respect to the tax consequences of the Plan that differs from the tax consequences described below.  No ruling has been or will be sought from the IRS, no opinion of counsel has been or will be obtained, and no representations are made regarding any tax aspect of the Plan.

This discussion does not address all aspects of U.S. federal income taxation that may be relevant to a particular Creditor or Interest holder in light of such Creditor's or Interest holder's facts and circumstances, or to certain types of Creditors or Interest holders subject to special treatment under the IRC (for example, governmental entities and entities exercising governmental authority, non-U.S. taxpayers, banks and certain other financial institutions, broker-dealers, insurance companies, tax-exempt organizations, real estate investment trusts, regulated investment companies, persons holding a Claim as part of a hedge, straddle, constructive sale, conversion transaction, or other integrated transaction, Creditors that are or hold their Claims through a partnership or other pass-through entity, and persons that have a functional currency other than the U.S. dollar).  This summary does not address state, local, or non-United States tax consequences of the Plan, nor does this summary address federal taxes other than income taxes.  Furthermore, this discussion generally does not address U.S. federal income tax consequences to Creditors that

are unimpaired under the Plan or that are not entitled to receive or retain any property under the Plan or to Persons who are deemed to have rejected the Plan.

As discussed above, the Liquidating Trust may encompass several segregated accounts within the overall Liquidating Trust, including those relating to the Health Care Fiduciary Account, which accounts hold (or may hold) some funds separate and apart from the general funds which may be available for distributions to holders of Allowed General Unsecured Claims. The Customer Trust Funds, including the funds to be held in the Health Care Fiduciary Account, are intended to be held within the Liquidating Trust consistent to the extent practicable with the requirements of ERISA. While the Liquidating Trust is subject to U.S. federal income taxation law and bankruptcy laws applicable to such a liquidating trust as described below, there may be exceptions with respect to U.S. federal income tax consequences for certain plan sponsors and corresponding participants and beneficiaries, among others, who receive amounts attributable to the Customer Trust Funds in the Health Care Fiduciary Account or other segregated accounts.

It could be possible that certain funds in any such accounts could eventually be distributed on a tax-free basis to plan sponsors and related participants and beneficiaries or others, but at this point in time it is uncertain and any such tax treatment discussion is beyond the scope of this portion of the Plan due to, among other reasons, the eventual structure of the Liquidating Trust and the uncertainty relating to the source of any eventual recoveries. Plan sponsors and related participants and beneficiaries and others are encouraged to consult with their tax advisors relating to any amounts that are eventually recovered or otherwise received under this Plan. More detail on the general rules on taxation that apply to the overall Liquidating Trust are discussed below.

A.     *Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets; Tax Reporting and Tax Payment Obligations*

For U.S. federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under Treasury Regulation Section 301.7701-4. Accordingly, for U.S. federal income tax purposes, it is intended that the beneficiaries of the Liquidating Trust be treated as if they had received a distribution from the Estates of an undivided interest in each of the assets of the Liquidating Trust (to the extent of the value of their respective shares therein) and then contributed such interests to the Liquidating Trust.

B.     *Liquidating Trust Assets Treated as Owned by Beneficiaries of Liquidating Trust*

For all U.S. federal income tax purposes, the transfer of assets (net of any applicable liabilities) to the Liquidating Trust for the benefit of the beneficiaries thereof will be treated as (a) a transfer by the Debtors of the Liquidating Trust Assets (net of any applicable liabilities) directly to the beneficiaries of the Liquidating Trust (to the extent of the value of their respective shares in the assets of the Liquidating Trust), followed by (b) the transfer of the Liquidating Trust Assets (net of any applicable liabilities) by the beneficiaries of the Liquidating Trust (to the extent of the value of their respective share in the Liquidating Trust Assets) to the Liquidating Trust in exchange for the beneficial interests in the Liquidating Trust. Accordingly, for U.S. federal income tax purposes, the Liquidating Trust will be treated as a grantor trust, and the beneficiaries of the

Liquidating Trust will be treated as the grantors of the Liquidating Trust as if they were the owners of the Liquidating Trust Assets.

### C.    Tax Reporting

The Liquidating Trust will be responsible for filing all federal, state, local and foreign tax returns, including, but not limited to, any documentation related thereto for current or former employees, vendors or contractors of the Debtors, for the Debtors, and for the Liquidating Trust; provided, *however*, that any filings made by Liquidating Trust are not meant to satisfy any such obligations that may apply to separately to a Health Benefit Plan.  Plan sponsors, along with their corresponding Health Benefit Plan, may need to consult with their tax advisor related to any ongoing filings that may be otherwise be due under ERISA or otherwise.  Any discussion of any such filings is beyond the scope of this Plan.

The Liquidating Trust will file all tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Article 2. Within a reasonable time following the end of the taxable year, the Liquidating Trustee shall send to each holder of a beneficial interest appearing on its record during such year, a separate statement setting forth such holder's share of items of income, gain, loss, deduction or credit and each such holder will be required to report such items on such holder's federal income tax returns. The Liquidating Trustee may provide each such holder of a beneficial interest with a copy of the Form 1041 for the Liquidating Trust (without attaching any other holder's Schedule K-1 or other applicable information form) along with such holder's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement. The Liquidating Trustee shall allocate the taxable income, gain, loss, deduction or credit of the Liquidating Trust with respect to each holder of a beneficial interest to the extent required by the IRC and applicable law.  As stated above, the Liquidating Trust encompasses (or may encompass) several segregated accounts such as the Health Care Fiduciary Account, and there may be exceptions with respect to U.S. federal income tax consequences for certain beneficiaries who receive amounts from these segregated accounts, but any such discussion is beyond the scope of this Plan.

As soon as possible after the Effective Date, the Liquidating Trust shall make a good faith valuation of the Liquidating Trust Assets, and such valuation shall be used consistently by all parties for all federal income tax purposes.

The Liquidating Trust may request an expedited determination of the tax obligations of the Liquidating Trust under Bankruptcy Code Section 505(b) for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trust will comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.

### D.    Payment of Taxes

The Liquidating Trust shall be responsible for payments of all Allowed tax obligations of the Debtors including Priority Tax Claims and Administrative Claims, in addition to any taxes imposed on the Liquidating Trust or its assets.  In the event, and to the extent, any Cash retained

on account of Disputed Claims associated with the Liquidating Trust is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of the Liquidating Trust allocable to, or retained on account of, Disputed Claims, such taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidating Trust as a result of the resolutions of such Disputed Claims.

E.    <em>Federal Income Tax Consequences to Creditors</em>

The tax treatment of holders of Claims, and the character, amount, and timing of income, gain, or loss recognized as a consequence of the Plan and Distributions pursuant to the Plan may vary, depending upon, among other things: (i) whether the Claim (or a portion of the Claim) is for principal or interest; (ii) the type of consideration the holder receives for the Claim, (iii) whether the holder receives Distributions under the Plan in more than one taxable year; (iv) the manner in which the holder acquired the Claim; (v) the length of time that the Claim has been held; (vi) whether the Claim was acquired at a discount; (vii) whether the holder of the Claim has taken a bad debt deduction with respect to part or all of the Claim; (viii) whether the holder of the Claim has previously included in income accrued but unpaid interest on the Claim; (ix) the holder's method of tax accounting; (x) whether the Claim is an installment obligation for U.S. federal income tax purposes; (xi) whether the Claim, and any instrument received in exchange for the Claim, is a "security" for U.S. federal income tax purposes; and (xii) whether and the manner in which the "market discount" rules of the Internal Revenue Code apply to the holder of the Claim.

Holders of Claims that receive cash and property other than stock and securities for their Claim will recognize gain or loss for U.S. federal income tax purposes equal to the difference between the "amount realized" by the holder of the Claim and the holder's tax basis in the Claim. The "amount realized" is the sum of the amount of cash and the fair market value of any other property received under the Plan in respect of the Claim (other than amounts received in respect of a Claim for accrued unpaid interest). The holder's tax basis in the Claim (other than a Claim for accrued unpaid interest) is generally the holder's cost, though tax basis could be more or less than cost depending on the specific facts of the holder of the Claim. Any gain or loss realized may be capital gain or loss or ordinary gain or loss, depending on the circumstances of the holder of the Claim.

Holders that previously included in income accrued but unpaid interest on a Claim may be entitled to a deductible loss to the extent such interest is not satisfied under the Plan. Conversely, a holder of a Claim has ordinary income to the extent of the amount of cash or the fair market value of property received in respect of a Claim for (or the portion of a Claim treated as allocable to) accrued unpaid interest that was not previously included in income by the holder of the Claim. The Plan treats all amounts payable to a holder of a Claim as principal until the principal amount of the Claim has been paid in full. The Liquidating Trustee will file the Debtors' tax returns consistent with this allocation, but it is uncertain whether this allocation will be respected by the IRS. The IRS may take the position that payments should be allocated first to interest or should be pro-rated between principal and interest. If the IRS prevails in this assertion, holders of Claims may be required to recognize ordinary interest income even though they have an overall loss (and possibly a capital loss, the deductibility of which may be limited) with respect to such holder's

Claims. Each holder of a Claim is urged to consult such holder's own tax advisor regarding the amount of such holder's Claim allocable to accrued unpaid interest and the character of any loss with respect to accrued but unpaid interest that the holder previously included in income.

A holder of a Claim who receives, in respect of such holder's Claim, an amount that is less than such holder's tax basis in the Claim may be entitled to a bad debt or worthless securities deduction. The rules governing the character, timing, and amount of these deductions depend upon the facts and circumstances of the holder of the Claim, the obligor, and the instrument with respect to which the deduction is claimed, including whether (i) the holder is a corporation or (ii) the Claim constituted (a) a debt created or acquired (as the case may be) in connection with the holder's trade or business or (b) a debt, the loss from worthlessness of which is incurred in the holder's trade or business. A holder of a Claim that has previously recognized a loss or deduction in respect of such holder's Claim may be required to include in income amounts received under the Plan that exceed the holder's adjusted basis in its Claim.

A holder of a Claim that is an installment obligation for U.S. federal income tax purposes may be required to recognize any gain remaining with respect to such obligation if, pursuant to the Plan, the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold, or otherwise disposed of within the meaning of section 453B of the Internal Revenue Code.

A holder of a Claim that acquires a Claim at a market discount generally is required to treat any gain realized on the disposition of the Claim as ordinary income to the extent of the market discount that accrued during the period the Claim was held by the holder and that was not previously included in income by the holder.

Amounts paid to holders of Claims are subject to generally applicable withholding, information and backup withholding rules. The Plan authorizes the Debtors and the Liquidating Trustee, as applicable, to withhold and report amounts required by law to be withheld and reported. Amounts properly withheld from Distributions to a holder of a Claim and paid over to the applicable taxing authority for the account of such holder will be treated as amounts distributed to such Holder. Holders are required to provide the Debtors and the Liquidating Trustee, as applicable, with the information necessary to effect information reporting and withholding as required by law. Notwithstanding any other provision of the Plan, holders of Claims that receive a Distribution pursuant to the Plan are responsible for the payment and satisfaction of all tax obligations, including income, withholding, and other tax obligations imposed with respect to the Distribution, and no Distribution shall be made until a Holder has made arrangements satisfactory to the Debtors or the Liquidating Trustee, as applicable, for the payment and satisfaction of such obligations.

Holders of Claims may be subject to backup withholding on payments pursuant to the Plan unless the holder of such Claim (i) is not a corporation and is not otherwise exempt from backup withholding and, when required, demonstrates that or (ii) provides a correct taxpayer identification and certifies under penalty of perjury that the taxpayer identification number is correct and that the holder of the Claim is not subject to backup withholding because of previous failure to report dividend and interest income. Amounts withheld due to backup withholding will be credited against the Claim holder's federal income tax liability and excess withholding may be refunded if a timely claim for refund (generally, a U.S. federal income tax return) is filed with the IRS.

Treasury regulations require tax return disclosure of certain types of transactions that result in the taxpayer claiming a loss in excess of specified thresholds. Holders of Claims are urged to consult their own tax advisors regarding these regulations and whether the transactions contemplated by the Plan would be subject to these regulations and would require such disclosure.

As stated above, the Liquidating Trust encompasses (or may encompass) several segregated accounts, such as the Health Care Fiduciary Account and other segregated accounts, and a different tax treatment may apply to amounts held (or that may be held) in such accounts. Holders of Claims related to any such accounts are urged to consult their own tax advisors regarding any amounts that may eventually be received which are attributable or allocated to such accounts.

**2.8**    **Projections in Support of Debtors' Ability to Make Payments Under the Proposed Plan.**

As set forth above and more fully in the Bidding Procedures and Sale Motion, the Debtors are engaged in a marketing process for potential purchasers to facilitate the Debtors' emergency from these Chapter 11 Cases. The Debtors believe that this marketing process will test the market and result in a lump-sum payment through an asset purchase agreement that maximizes value for the benefit of all Creditors. The Sale Proceeds, among other things, will be used to make the Distributions set forth in this Plan. As such, no financial projections are set forth in this Plan.

## ARTICLE 3
## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors, unless such liquidation or reorganization is proposed in the Plan.

**3.1**    **Ability to Initially Fund Plan.**

The Debtors believe that the Debtors will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash will be filed as part of the Plan Supplement after the Sale Process concludes.

**3.2**    **Ability to Make Future Plan Payments.**

The Debtors intend to make all payments required under this Plan from, among other things, the Sale Proceeds, the proceeds from Retained Causes of Action, and the proceeds of the Beyond Risk Settlement. Accordingly, section 1190(2) of the Bankruptcy Code, which requires the submission of future earnings of the Debtors to the Liquidating Trustee as necessary for execution of the Plan, does not apply.

# ARTICLE 4
## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit E**.

# ARTICLE 5
## RELEASES, EXCULPATION, INJUNCTION, AND RELATED PROVISIONS

### 5.1    Releases by the Debtors.

To the extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, the Released Parties shall be deemed released and discharged by the Debtors and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of any of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to any act, omission, transaction, event, or other occurrence relating to the Debtors, this Plan, or the Chapter 11 Cases taking place on or prior to the Effective Date; provided, however, that the foregoing "Debtor Releases" shall not operate to waive or release any Causes of Action of any Debtors arising out of facts and circumstances unknown to the Debtors and the Debtors' Related Parties: (1) against a Released Party arising from any contractual obligations owed to the Debtors that are pursuant to an Executory Contract that is not otherwise rejected by the Debtors pursuant to section 365 of the Bankruptcy Code before, after, or as of the Effective Date; (2) expressly set forth in and preserved by the Plan or related documents; or (3) arising from fraud, gross negligence, willful misconduct, or criminal conduct. Notwithstanding anything to the contrary in the foregoing, the "Debtor Releases" set forth above do not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed in connection with the Plan with respect to the Debtors or the Estates.

### 5.2    Releases by Holders of Claims and Interests.

To the extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, as of the Effective Date, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to any act, omission, transaction, event, or other occurrence relating to the Debtors, this Plan, or the Chapter 11 Cases taking place on or prior to

the Effective Date; *provided, however,* that the foregoing release shall not operate to waive or release any Causes of Action of any Releasing Party arising out of facts and circumstances unknown to any such Releasing Party and its Related Parties: (1) against a Released Party arising from any contractual obligations owed to the Releasing Party that are wholly unrelated to the Debtors; (2) expressly set forth in and preserved by the Plan or related documents; or (3) arising from fraud, gross negligence, willful misconduct, or criminal conduct. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed in connection with the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third party release set forth above, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the third party releases set forth above are consensual and: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Releasing Parties; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after notice and opportunity for a hearing; and (6) a bar to any of the Releasing Parties asserting any Claim released by the third party release set forth against any of the Released Parties. **For the avoidance of doubt, any holder of a Claim who elects the Release Opt-Out on its Opt-Out Form and any holder of a Claim who objects to the releases set forth in this Section 5.2 and whose objection is not withdrawn prior to confirmation of the Plan shall not be bound by such releases.**

### 5.3    Exculpation.

To the fullest extent permitted by applicable law, except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim, obligation, Cause of Action or liability for any Exculpated Claim, except for those that are determined in a final order to have constituted actual fraud, gross negligence, willful misconduct, or criminal conduct.

### 5.4    Injunction.

Except as otherwise expressly provided in the Plan or related documents, or for obligations issued pursuant to the Plan, from and after the Effective Date, all Releasing Parties are permanently enjoined from taking any of the following actions against the Debtors or any Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, or subrogation against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and

(5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Nothing in the Plan or the Confirmation Order shall preclude any Entity from pursuing an action against one or more of the Debtors in a nominal capacity to recover insurance proceeds. For the avoidance of doubt, the filing of a proof of claim is sufficient to preserve a right of set off hereunder.

## 5.5    Setoffs.

Except as otherwise expressly provided for in the Plan, each Debtor and the Liquidating Trustee (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non bankruptcy law or as may be agreed to by the holder of a Claim or an Interest, may set off against any Allowed Claim or Allowed Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Allowed Interest (before any distribution is made on account of such Allowed Claim or Allowed Interest), any claims, rights and Causes of Action of any nature that such Debtor may hold against the holder of such Allowed Claim or Allowed Interest, to the extent such claims, rights or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Debtor of any such claims, rights and Causes of Action that such Debtor may possess against such holder. In no event shall any holder of Claims or Interests be entitled to set off any Claim or Interest against any claim, right or Cause of Action of the Debtor unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date. For the avoidance of doubt, the filing of a proof of claim is sufficient to preserve a right of set off hereunder.

Notwithstanding the foregoing, solely with respect to underfunded Health Benefit Plans, the Debtors and the Liquidating Trustee, as applicable, shall not setoff a deficit under a Health Benefit Plan against a plan participant's claim for the payment or reimbursement of health benefits under the Health Benefit Plan.

## 5.6    Release of Liens.

Except as otherwise expressly provided herein, on the Effective Date, all Liens on any property of the Debtors shall automatically terminate, all property subject to such liens shall be automatically released, and all guarantees of any Debtors shall be automatically discharged and released.

For the avoidance of doubt, the Liens securing the DIP Claims shall also be released as part of the Beyond Risk Settlement.

## ARTICLE 6
## CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE

**6.1      Conditions Precedent to Confirmation.**

It shall be a condition to Confirmation hereof that:

      1.      All provisions, terms and conditions hereof are approved in the Confirmation Order.

      2.      Any Sale shall have been approved by the Bankruptcy Court prior to or contemporaneously with Confirmation.

      3.      The Confirmation Order shall provide that, among other things, the Debtors and the Liquidating Trustee, as applicable, are authorized and directed to take all actions necessary or appropriate to consummate this Plan, including, without limitation, entering into, implementing, and consummating the other contracts, instruments, and other agreements or documents created in connection with or described in this Plan.

      4.      The Beyond Risk Settlement shall have been approved by the Bankruptcy Court, which approval may be through the Confirmation Order.

**6.2      Conditions Precedent to the Effective Date.**

It shall be a condition to the Effective Date that the following provisions, terms, and conditions are satisfied (or waived pursuant to the provisions of Section 7.3 hereof), and the Effective Date shall occur on the date upon which the last of such conditions are so satisfied and/or waived.

      1.      The Confirmation Order shall be a Final Order in form and substance acceptable to the Debtors and Beyond Risk, each in their sole discretion, in consultation with the Subchapter V Trustee.

      2.      The Debtors shall have funded with Cash the Professional Fee Reserve with all amounts contemplated under the Plan.

      3.      The DIP Lender shall waive the DIP Claims per the Beyond Risk Settlement and file a UCC-3 evidencing the termination of its Lien.

      4.      The Confirmation Order shall provide that, among other things, the Debtors and the Liquidating Trustee, as applicable, are authorized and directed to take all actions necessary or appropriate to consummate this Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, and other agreements or documents created in connection with or described in this Plan.

      5.      The Liquidating Trust Agreement shall have been executed and delivered by all of the entities that are parties thereto and all conditions precedent to the

consummation thereof shall have been waived or satisfied in accordance with the terms thereof.

6.    All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.  For the avoidance of doubt, the appointment of the Independent Fiduciary shall not constitute a condition precedent under this Section 6.2.

7.    Any Sale shall have closed pursuant to the applicable purchase agreement.

**6.3    Waiver of Conditions.**

Each of the conditions to Confirmation and to Consummation set forth in this Article 6 may be waived with the consent of the Debtors and the DIP Lender without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate this Plan; *provided, however*, the consent of the DIP Lender to such waiver shall only be required as and to the extent set forth in the Plan.

**6.4    Effect of Nonoccurrence of Conditions.**

If the Consummation of this Plan does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders or any other Entity in any respect.

## ARTICLE 7
## RISK FACTORS

**7.1    Litigation Recoveries**

As set forth in Section 2.5 of the Plan, the Liquidating Trust Assets include, but are not limited to, Retained Causes of Action.  The Retained Causes of Action include, among other things, litigation claims that the Debtors possess against former management.  Litigation funding is not being provided to the Liquidating Trust for the pursuit of those claims other than the portion of the Liquidating Trust Funding Amount, equal to $100,000, that will be deposited in the General Account.

As described in Section 1.2 of the Plan, Beyond Risk has asserted various causes of action against the Debtors' former management in the Delaware Action.  If Beyond Risk obtains a judgment against or settles with former management in the Delaware Action, former management may not have any remaining assets to fund a recovery for the Liquidating Trust and there may be insufficient insurance proceeds that would provide a recovery to the beneficiaries of the Liquidating Trust.

### 7.2    Claims for Health Benefits

There may be insufficient funding for the satisfaction of claims against the Health Benefit Plans.  In the event there is insufficient funding, plan sponsors may be financially responsible for the payment of health benefit claims that are covered under the terms of an applicable Health Benefit Plan.  Plan participants may be ultimately financially responsible for the payment of claims and expenses that are not covered under the terms of the applicable Health Benefit Plan or not otherwise funded by their plan sponsor or available from any other source of funds.

It is possible that health services providers, such as hospitals and doctors, may not be bound by any network reduced pricing agreements for health benefits under the Health Benefit Plans. Health services providers may seek the full amount of their claim against plan participants if their claims remain unpaid.

## ARTICLE 8
## GENERAL PROVISIONS

### 8.1    Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the Estate in the Debtors, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the Estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtors acquire, as well as earnings from services performed by the Debtors, after the date of commencement of the Chapter 11 Cases but before the Chapter 11 Cases are closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtors shall remain in possession of all property of the Estate.

### 8.2    Binding Effect.

THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES, OR (III) FAILED TO OBJECT TO THE PLAN.

### 8.3    Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**8.4     Retention of Jurisdiction by the Bankruptcy Court.**

The Bankruptcy Court shall retain exclusive jurisdiction of these Chapter 11 Cases with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan, other than those that shall fall within the jurisdiction of the district court in which the action involving the appointment of the Independent Fiduciary will be filed; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of Executory Contracts or Unexpired Leases, and (v) to adjudicate any Retained Causes of Action which may exist in favor of the Debtors and are property of the Liquidating Trust, including preference and fraudulent transfer causes of action, other than those excluded under Section 1.10 of the Plan and not including ERISA actions that may be prosecuted by the Department of Labor.

**8.5     Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.6     Modification of Plan.**

The Debtors may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a).

If the Plan is confirmed under § 1191(a), the Debtors may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under § 1191(b), the Debtors may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**8.7     Reporting Requirements.**

The Liquidating Trustee shall file quarterly post-confirmation reports, served on the U.S. Trustee on or before the 20th day after the end of the calendar quarter.  The reporting shall include, at a minimum, the following information:

(a) the bank name & account type of the Liquidating Trust's bank accounts;

(b) the name of the person with signatory authority over the accounts;

(c) any investments (general type), if any, and where those investments are located;

(d) disbursements under the Plan during the reporting period (by class); and

(e) cumulative disbursements under the Plan to date.

**8.8**     **Final Decree.**

Once the Estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Liquidating Trustee, shall file a motion with the Bankruptcy Court to obtain a final decree to close the Chapter 11 Cases. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 9
## ATTACHMENTS

The following documents accompany the Plan:

[X]     Debtors' Assets at Fair Market Value and Debtors' Liabilities, annexed as **Exhibit A**;

[X]     Debtors' Most Recent Financial Statements Issued Before Bankruptcy, annexed as **Exhibit B**;

[X]     Debtors' Most Recent Post-petition Operating Report Filed Since the Commencement of the Chapter 11 Cases, annexed as **Exhibit C**;

[X]     Executory Contracts and Unexpired Leases, annexed as **Exhibit D**;

[X]     Liquidation Analysis, annexed as **Exhibit E**.

The following documents will be filed as part of the Plan Supplement:

a. Table showing the amount of Cash on hand as of the Effective Date, and the sources of that Cash, which on the date hereof, is contingent upon the Sale(s) and the proceeds of the Beyond Risk Settlement.

b. Table showing the actual Sale Proceeds to be received by the Estates following the closing of one or more Sale(s).

c. A schedule of Executory Contracts to be assumed and assigned, which on the date hereof, is contingent upon the Sale(s).

d. A schedule of Executory Contracts to be rejected, which on the date hereof, is contingent upon the Sale(s).

e. The Liquidating Trust Agreement.

## ARTICLE 10
## FREQUENTLY ASKED QUESTIONS

**What Are the Debtors Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** Generally, in order to confirm a plan of reorganization or liquidation, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan. However, under § 1191(b), subchapter V debtors are not required to solicit votes to accept a

proposed plan. Nevertheless, the Debtors are providing this Plan to holders of Claims and Interests in order for such holders to make informed decisions as to whether to opt-out of the releases in Article 5, Section 5.2 of the Plan. If the Bankruptcy Court finds that the Plan does not discriminate unfairly and is fair and equitable with respect to each Class of Claims that is Impaired under the Plan, the Bankruptcy Court may confirm the Plan.

**How Do I Determine Which Class I Am In?**  To determine the Class of your Claim or Interest, you must first determine whether your Claim is secured or unsecured. Your Claim is secured if you have a validly perfected security interest in collateral owned by the Debtors. If you do not have any collateral, your Claim is unsecured. The Table of Contents will direct you to the treatment provided to the Class in which you are grouped. The pertinent section of the Plan dealing with that Class will explain, among other things, who is in that Class, what is the size of the Class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Article 2, Section 2.2 lists all Classes of claimants and their types of Claims.

**Why Is Confirmation of a Plan of Reorganization or Liquidation Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtors and all of their Creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtors may not pay Creditors as proposed in the Plan while the Debtors remain in bankruptcy.

**How Do I Determine Whether I Am in an Impaired Class?**  Article 2, Section 2.2 of the Plan identifies the classes of creditors whose claims are Impaired.

**When Is the Deadline by Which I Need to Return My Opt-Out Form?**  The Plan is being distributed to all Claim holders for their review and consideration with respect to whether they should opt-out of the releases set forth in Article 5, Section 5.2 of the Plan. The deadline by which Opt-Out Forms must be returned is April 26, 2023. For the avoidance of doubt, beneficiaries of health benefit plans and the Department of Labor must return Opt-Out Forms by September 27, 2023. Opt-Out Forms should be mailed to the following address:

<u>If by First Class Mail</u>:

Arsenal Intermediate Holdings, LLC
c/o Kroll Restructuring Administration, LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

<u>If by Overnight Courier or Overnight Mail</u>:
Arsenal Intermediate Holdings, LLC
c/o Kroll Restructuring Administration, LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

<u>If Submitted Through the Opt-Out Portal</u>:

Kroll Restructuring Administration, LLC, will accept Opt-Out Forms if properly completed through the Opt-Out Portal. To submit your Opt-Out Form via the Opt-Out Portal, visit https://cases.ra.kroll.com/AIH/, click on the "Submit Opt-Out" section of the website for the Debtors, and follow the instructions to submit your Opt-Out Form.

**How Do I Determine When and How Much I Will Be Paid?** In Article 2, the Debtors have provided summaries of what it anticipates each Class of Creditors will receive under the Plan.

## ARTICLE 11
## DEFINITIONS

11.1   The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

11.2   <u>Administrative Claimant</u>: Any person entitled to payment of an Administration Expense.

11.3   <u>Administrative Claim Bar Date</u>:  Any claims for the payment of an Administrative Expense shall be filed no later than thirty (30) days after the Effective Date.

11.4   <u>Administrative Expense</u>: Any cost or expense of administration of the Chapter 11 Cases entitled to priority under Section 507(a)(2) of the Bankruptcy Code and Allowed under Section 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of preserving the Debtors' Estates, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtors, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Subchapter V Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtors' Estates under Chapter 123, Title 28, United States Code.

11.5   <u>Administrative Tax Claim</u>: Any tax incurred pursuant to Section 503(b)(1)(B) of the Bankruptcy Code.

11.6   <u>Affiliate</u>:  An affiliate as defined in section 101(2) of the Bankruptcy Code.

11.7   <u>Allowed Claim</u>: With reference to any Claim or Interest:  (a) any Claim or Interest as to which no objection to allowance has been interposed (either in the Bankruptcy Court or in the ordinary course of business) on or before the Claims Objection Deadline or the applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order, either before or after the Effective Date, to the extent such objection is determined in favor of the respective Holder; (b) any Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of the Bankruptcy Court, either before or after the Effective Date; (c) any Claim or Interest expressly deemed Allowed by the Plan; (d) all scheduled Claims listed as undisputed, not contingent and unliquidated; (e) Claims subject to a proof of claim once the Claims Objection Deadline has passed with

no objection; or (f) any Claim or Interest affirmatively Allowed by the Debtors or following the Effective Date, by the Liquidating Trustee.

**11.8**   Allowed Priority Tax Claim: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtors shall be entitled on the Confirmation Date.

**11.9**   Allowed Secured Claim: Allowed Secured Claims are claims secured by property of the Debtors' Estates (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Bankruptcy Code

**11.10**   Allowed Unsecured Claim:   An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtors shall be entitled on the Confirmation Date.

**11.11**   Arsenal:  Debtors Arsenal Health and Arsenal Insurance Management.

**11.12**   Arsenal Health:  Debtor Arsenal Health, LLC.

**11.13**   Arsenal Insurance:  Debtor Arsenal Insurance Management, LLC.

**11.14**   Arsenal Intermediate:  Debtor Arsenal Intermediate Holdings, LLC.

**11.15**   Automatic Stay Motion:   The *Motion of the Debtors for Entry of an Ex Parte Order (I) Temporarily Prohibiting Healthcare Providers from Direct Billing and/or Commencing Actions Against Current or Former Employees and their Dependents Related to Unpaid Claims by Extending or Applying the Automatic Stay; (II) Determining that Benefit Plan Assets are to be Held in Trust for the Benefit of the Covered Individuals; and (III) Granting Related Relief* [D.I. 99]

**11.16**   Bankruptcy Code:  Title 11 of the United States Code, 11 U.S.C. §§ 101– 1532, and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

**11.17**   Bankruptcy Court:  The United States Bankruptcy Court for the District of Delaware.

**11.18**   Bankruptcy Rules: The Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms, or the Local Rules, as each has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

**11.19**   Bar Date:  With respect to any particular Claim, the specific date set by the Bankruptcy Court as the last day for filing proofs of claim, motions for allowance of Administrative Claims, or proofs of Interest against the Debtors in the Chapter 11 Cases for that specific Claim or Interest, which, for the avoidance of doubt, shall mean April 26, 2023 for Holders of General Unsecured Claims and July 25, 2023 for governmental entities.   For the avoidance of doubt, the Bar Date applicable to beneficiaries of Health Benefit Plans is September 27, 2023 and the Bar Date applicable to sponsors of Health Benefit Plans is

June 27, 2023.  The Bar Date applicable to Administrative Expenses is the Administrative Claims Bar Date, which shall be within thirty (30) days after the Effective Date.

**11.20**   Beyond Risk:  Beyond Risk Topco Holdings, L.P. and Beyond Risk SP GP LLC and each of their non-Debtor direct and indirect subsidiaries, including BR Intermediate Holdings, LLC.

**11.21**   Beyond Risk Intercompany Claims:  Claims held by Beyond Risk against a Debtor arising out of prepetition transfers.

**11.22**   Beyond Risk Settlement:  The settlement between the Debtors and the Beyond Risk Entities on the terms set forth in the Plan.

**11.23**   Bidding Procedures and Sale Motion:  *Debtors' Motion Seeking Entry of an Order (A)(I) Approving Bidding Procedures, (II) Scheduling the Bid Deadline and the Auction, (III) Scheduling Hearing and Objection Deadlines with Respect to the Sale, (IV) Approving the Form and Manner of the Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief and (B)(I) Approving the Sale of the Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [D.I. 62].

**11.24**   BR Intermediate:  BR Intermediate Holdings, LLC.

**11.25**   BR Topco:  Beyond Risk Topco Holdings, L.P.

**11.26**   Cash:  Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks, and commercial paper of any entity, including interest accrued or earned thereon.

**11.27**   Causes of Action:  Any claims, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in tort, law, equity, or otherwise.  Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

**11.28**   Chapter 11 Cases:  These jointly administered cases under chapter 11 of the Bankruptcy Code proceeding under case number 23-10097 (CTG).

**11.29**   Claim:  Any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

**11.30**  Class:  A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**11.31**  Confirmation:  The entry by the Bankruptcy Court of an order confirming this Plan.

**11.32**  Confirmation Date:  The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**11.33**  Confirmation Hearing:  The hearing by the Bankruptcy Court to consider confirmation of the Plan.

**11.34**  Confirmation Order:  An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**11.35**  Consummation:  The occurrence of the Effective Date.

**11.36**  Creditor:  Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**11.37**  Customer Trust Funds:  Health Benefit Plan funds held in trust in accordance with Arsenal Health's Administrative Services Agreements, related documentation, and ERISA, including, but not limited to, those funds held in the Bank of America, N.A. accounts, and any other funds that are to be deposited into the Health Care Fiduciary Account.

**11.38**  Debtors:  Arsenal Intermediate, Arsenal Insurance, and Arsenal Health.

**11.39**  Delaware Action:  The action commenced by BR Intermediate and Beyond Risk Topco Holdings, L.P. in the Delaware Chancery Court on January 25, 2023 against Norman Chandler, Lansera, Inc., Atlantis Group, LLC and Justin Law proceeding under case number 2023-0084-MTZ.

**11.40**  Department of Labor:  The United States Department of Labor.

**11.41**  DIP Amendment:  The amendment to the DIP Credit Agreement, filed on April 28, 2023 [D.I. 236], whereby BR Intermediate provided the Debtors with an additional $750,000 in funding under the DIP Credit Agreement.

**11.42**  DIP Claims: Any Claims BR Intermediate may have under the DIP Credit Agreement up to the aggregate amount of $1.5 million.  Any amounts owed under the DIP Credit Agreement in excess of $1.5 million shall be classified as General Unsecured Claims, subject to approval of the Beyond Risk Settlement.

**11.43**  DIP Credit Agreement:  That certain $2,250,000 Senior Secured, Super Priority Debtor in Possession Term Loan, Guaranty and Security Agreement, entered into between Arsenal

Intermediate as borrower, Arsenal Insurance and Arsenal Health as guarantors, and BR Intermediate as Lender, as amended by the DIP Amendment.

**11.44** <u>DIP Facility</u>:  The $2,250,000 facility provided to the Debtors by BR Intermediate pursuant to the DIP Credit Agreement and the additional $750,000 funding provided to the Debtors by BR Intermediate pursuant to the DIP Amendment.

**11.45** <u>DIP Lender</u>: BR Intermediate, solely in its capacity as DIP Lender under the DIP Credit Agreement.

**11.46** <u>DIP Motion</u>:  The *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing* [D.I. 10].

**11.47** <u>Disputed Claim</u>:  Any claim against the Debtors pursuant to Section 502 of the Bankruptcy Code that the Debtors have in any way objected to, challenged or otherwise disputed.

**11.48** <u>Distributions</u>:  The property required by the Plan to be distributed to the holders of Allowed Claims.

**11.49** <u>Effective Date</u>:  The first business day after the later of the date on which all conditions of the Plan have been satisfied or waived and no stay of the order confirming the Plan Confirmation Order is in effect.

**11.50** <u>Entity</u>: An "entity," as defined in section 101(15) of the Bankruptcy Code.

**11.51** <u>ERISA</u>:  The Employee Retirement Income Security Act of 1974, as amended.

**11.52** <u>Estate</u>:   As to each Debtor, the Estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

**11.53** <u>Exculpated Claim</u>:  Any Claim related to any act or omission on or after the Petition Date through and including the Effective Date in connection with, relating to or arising out of the Debtors' in- or out-of-court restructuring efforts, the Debtors' Chapter 11 Cases, formulation, preparation, dissemination, negotiation or filing of the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other agreement; *provided, however,* that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or fraud.

**11.54** <u>Exculpated Party</u>: Solely in their capacity as such, (i) each of the Debtors and their officers, managers, and Professionals and, to the extent that the Court determines they are acting or have acted as fiduciaries of the Debtors, the Debtors' employees, managing members, agents, representatives, financial advisors, attorneys, accountants, and consultants, and (ii) the Subchapter V Trustee.

**11.55** <u>Executory Contracts</u>:  All Unexpired Leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**11.56** <u>Final Order</u>:  An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**11.57** <u>General Account</u>:  The account established and maintained by the Liquidating Trustee for the purpose of depositing all funds to be distributed to holders of General Unsecured Claims.

**11.58** <u>General Unsecured Claim</u>:  Any unsecured Claim against any of the Debtors that is not an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, an Intercompany Claim, or a Beyond Risk Intercompany Claim.

**11.59** <u>GUC Distribution Amount</u>:  Proceeds to be distributed under the Plan to holders of Claims in Class 4, including such Holders' pro rata share of the Liquidating Trust Assets which shall be distributed in accordance with the Liquidating Trust Agreement.

**11.60** <u>Health Benefit Plans</u>:  Self-funded employee benefit health plans, sponsored by an employer that engaged Arsenal Health as a service provider.

**11.61** <u>Health Care Fiduciary Account</u>:  The bank account that will be established by the Liquidating Trust to hold any Customer Trust Funds and any other funds to be transferred to the Independent Fiduciary, including any distribution made on account of the proofs of claim for the benefit of the Health Benefit Plans filed by the Department of Labor.  The Liquidating Trustee shall establish the Health Care Fiduciary Account at the same time the General Account is established.

**11.62** <u>Impaired</u>:  Any Claim or Interest in an Impaired Class within the meaning of section 1124 of the Bankruptcy Code.

**11.63** <u>Independent Fiduciary</u>:  An independent fiduciary for the Health Benefit Plans appointed by a federal district court in an action brought by the Department of Labor with assistance as reasonably requested provided by the Liquidating Trustee, with the responsibility, among others, for distributing the Customer Trust Funds and any other funds transferred from the Health Care Fiduciary Account.

**11.64** <u>Insurance Contracts</u>:  All insurance policies that have been issued at any time to provide coverage to any of the Debtors and all agreements, documents or instruments relating thereto.

**11.65** <u>Interest</u>:  An ownership interest in the Debtors, meaning BR Intermediate's interests in Arsenal Intermediate and Arsenal Intermediate's interests in Arsenal Insurance and Arsenal Health.

**11.66** <u>Intercompany Claims</u>.  Any Claim held by a Debtor against another Debtor.

**11.67** <u>Interim Compensation Procedures Order</u>:  The order governing the procedures for the payment of fees and expenses of Professionals during the Chapter 11 Cases [D.I. 96].

**11.68** <u>IRC</u>:  The U.S. Internal Revenue Code of 1986, as amended.

**11.69** <u>Lien</u>:  A lien as defined in section 101(37) of the Bankruptcy Code.

**11.70** <u>Liquidating Trust</u>:  The trust formed pursuant to the Plan and the Liquidating Trust Agreement to hold legal and equitable title to the Liquidating Trust Assets.

**11.71** <u>Liquidating Trustee</u>:  The person selected by the Debtors in consultation with the Subchapter V Trustee to act as the general administrator of the Plan and the trustee of the Liquidating Trust or any successor thereto pursuant to the terms of the Liquidating Trust Agreement.

**11.72** <u>Liquidating Trust Agreement</u>:  The trust agreement that establishes the Liquidating Trust and governs the powers, duties, and responsibilities of the Liquidating Trustee of the Liquidating Trust.  The Liquidating Trust Agreement shall be filed as part of the Plan Supplement.

**11.73** <u>Liquidating Trust Assets</u>:  Shall have the meaning set forth in Section 2.5 of this Plan.

**11.74** <u>Liquidating Trust Expenses</u>:  All reasonable legal and other fees and expenses incurred by the Liquidating Trust and Liquidating Trustee on account of, among other things, administration of the Liquidating Trust, winding down the Estates, dissolving the Debtors, and closing of the Chapter 11 Cases, including, without limitation, reasonable fees and expenses of professionals retained by the Liquidating Trustee, if any, insurance costs, taxes, escrow expenses and all other costs of administering the Liquidating Trust and the Estates in accordance with the Plan and the Liquidating Trust Agreement, as applicable.

**11.75** <u>Liquidating Trust Funding Amount</u>: In accordance with the terms of the Beyond Risk Settlement, Beyond Risk's contribution of $200,000 to fund the Liquidating Trust.

**11.76** <u>Managing Member</u>:  BR Intermediate, solely in its capacity as the Managing Member of Arsenal Intermediate.

**11.77** <u>OCP</u>: Each professional retained by the Debtors pursuant to the OCP Order.

**11.78** <u>OCP Order</u>:  The order entered by the Bankruptcy Court authorizing the Debtors to employ and compensate certain professionals utilized by the Debtors in the ordinary course of business. [D.I. 101].

**11.79** <u>Opt-Out Deadline</u>:  April 26, 2023 at 4:00 p.m. (ET).  For the avoidance of doubt, the Opt-Out Deadline for Plan Participants and the Department of Labor shall be September 27, 2023 at 4:00 p.m. (ET).

**11.80**  Opt-Out Form:  The form which holders of Claims or Interests may submit to Kroll Restructuring Administration, LLC in order to opt-out of the releases in Section 5.2 of the Plan.

**11.81**  Other Priority Claims:  Any Claim entitled to priority in payment under Section under Section 507(a), other than Priority Tax Claims and Administrative Claims.

**11.82**  Other Secured Claims.  A Claim that is Secured, but excluding the DIP Claims.

**11.83**  Person.  A "person," as defined in section 101(41) of the Bankruptcy Code.

**11.84**  Petition Date:  January 26, 2023, the date the chapter 11 petitions for relief were filed by each of the Debtors.

**11.85**  Plan:  This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**11.86**  Plan Administration Process:  The process for resolving any paying Claims described in this Plan.

**11.87**  Plan Supplement:  The documents and forms of documents, agreements, schedules, and exhibits to the Plan, which shall include, but is not limited to:  (i) the Liquidating Trust Agreement; (ii) the Schedule of Retained Causes of Action; (iii) the Schedule of Executory Contracts and Unexpired Leases that will be assumed and assigned or rejected; and (iv) a disclosure of the Sale Proceeds to be received following the closing of one or more Sale(s), each of which shall be filed no later than seven (7) days before the deadline to object to the Plan.

**11.88**  Priority Tax Claim:  Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**11.89**  Professionals:  means a Person or Entity: (i) employed in the Chapter 11 Cases pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code; or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.  For the avoidance of doubt, the Subchapter V Trustee shall be considered a Professional for purposes of this Plan.

**11.90**  Professional Fee Claims:  Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been previously paid.

**11.91**  Professional Fee Reserve:  The reserve established and funded by the Debtors prior to the Effective Date to satisfy the unpaid Professional Fee Claims of the Professionals.

**11.92**  Related Party.  Each in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless

of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, non-Debtor subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

11.93   Release Opt-Out:  The election, to be made solely through validly submitted Opt-Out Forms, to opt-out of the release provisions set forth in Section 5.2 of the Plan.

11.94   Released Parties: (a) Beyond Risk, (b) each Related Party of Beyond Risk, including for the avoidance of doubt any Professionals retained by Beyond Risk in connection with the Chapter 11 Cases, and (c) any officers of the Debtors who served in such capacity as of the Petition Date; *provided*, *however*, that "Released Parties" shall not include the Debtors, Norman Chandler, Justin Law, Lansera, Inc., Atlantis Group, LLC, Britt Taylor, or any defendant named in the McCain Ashurst Litigation or any former officer, director or employee of the Debtors that is not a Related Party of Beyond Risk.

11.95   Releasing Parties:  Collectively, (a) the Debtors, (b) each holder of a Claim that does not elect the Release Opt-Out on its Opt-Out Form or does not timely file an objection that is not withdrawn before Confirmation to the releases in Section 5.2 of the Plan, and (c) the Related Parties of each of the foregoing.

11.96   Retained Causes of Action:  All Causes of Action not sold pursuant to the Sale(s) or released under the Plan.  For the avoidance of doubt, Retained Causes of Action include any and all claims that the Debtors may possess against Norman Chandler, Justin Law, and Britt Taylor, as well as the McCain Ashurst Litigation.

11.97   Sale:  A sale or sales of substantially all of the Debtors' assets, as contemplated by the Bidding Procedures and Sale Motion.

11.98   Sale Proceeds:  The net proceeds received from the sale or sales of substantially all of the Debtors' assets.

11.99   Sale Process:  The process for the marketing and sale of all or substantially all of the Debtors' assets pursuant to the Bidding Procedures and Sale Order.

11.100  Schedules:  Schedules of Assets and Liabilities and Statements of Financial Affairs, as may be amended, filed by the Debtors with the Bankruptcy Court listing assets and liabilities.

11.101  Secured:  A Claim secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined

pursuant to section 506(a) of the Bankruptcy Code, or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

**11.102** <u>Secured Creditor</u>:  Any creditor that holds a Claim that is secured by property of the Debtors.

**11.103** <u>Subchapter V Trustee</u>:  The subchapter V trustee appointed pursuant to § 1183(a), and whose duties are prescribed under 11 U.S.C. § 1183(a) [D.I. 12].

**11.104** <u>Unexpired Lease</u>:  A lease of nonresidential real property pursuant to which one or more of the Debtors is a party that is subject to assumption or rejection under §§ 365 or 1123 of the Bankruptcy Code.

**11.105** <u>U.S. Trustee</u>:  The trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. § 1183(b), the Plan, or the Confirmation Order.

**11.106** <u>Unimpaired</u>:  With respect to a Class of Claims or Interests, a Claim or Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

**11.107** <u>Unsecured Creditor</u>:  Any Creditor that holds a Claim in the Chapter 11 Cases which is not a secured Claim.

*[Remainder of Page Left Intentionally Blank]*

*Respectfully Submitted,*

<u>/s/ Michael Wyse</u>
Michael Wyse
Chief Restructuring Officer

## **EXHIBIT A**

**Debtors' Assets at Fair Market Value and Debtors' Liabilities**

*See* Docket Nos.  104, 105 & 106

# **EXHIBIT B**

**Debtors' Most Recent Financial Statements Issued Before Bankruptcy**

| | Balance Sheet Arsenal Total | | Variance to Prior Y/E | |
| --- | --- | --- | --- | --- |
| | Dec 2022 | Dec 2021 | $ | % |
| Cash and cash equivalents | (2,775) | 20,711 | (23,487) | -113% |
| Accounts receivable | 112,401 | 2,776,652 | (2,664,252) | -96.0% |
| Unbilled accounts receivable | - | 94,347 | (94,347) | -100.0% |
| Prepaid expenses and other assets | 89,390 | 73,329 | 16,061 | 21.9% |
| **Current Assets** | **199,015** | **2,965,039** | **(2,766,023)** | **-93.3%** |
| Property and equipment, net | 159,744 | - | 159,744 | 0.0% |
| Goodwill, net | (0) | 44,979,561 | (44,979,561) | -100.0% |
| Intangibles, net | - | 366,000 | (366,000) | -100.0% |
| Intercompany | (709,840) | - | (709,840) | 0.0% |
| **Non-Current Assets** | **(550,095)** | **45,345,561** | **(45,895,656)** | **-101.2%** |
| **Assets** | **(351,080)** | **48,310,599** | **(48,661,679)** | **-100.7%** |
| | | | | |
| Accounts payable | 235,709 | 291,244 | (55,535) | -19.1% |
| Accrued Liabilities | 326,778 | 67,296 | 259,482 | 385.6% |
| **Current Liabilities** | **562,487** | **358,540** | **203,948** | **56.9%** |
| 25050-Lease liability | 137,495 | - | 137,495 | 0.0% |
| Other Non-Current Liabilities | 137,495 | - | | |
| **Non-Current Liabilities** | **137,495** | **-** | **137,495** | **0.0%** |
| **Liabilities** | **699,982** | **358,540** | **341,443** | **95.2%** |
| Members' equity | 47,952,060 | 47,952,060 | - | 0.0% |
| Noncontrolling interests | - | - | - | 0.0% |
| Retained Earnings (Loss) | (49,003,122) | - | (49,003,122) | 0.0% |
| **Equity** | **(1,051,062)** | **47,952,060** | **(49,003,122)** | **-102.2%** |

**<u>EXHIBIT C</u>**

**Debtors' Most Recent Post-Petition Operating Report**

**(Arsenal Intermediate Holdings, LLC)**

**Fill in this information to identify the case:**

Debtor Name ___Arsenal Intermediate Holdings, LLC___

United States Bankruptcy Court for the: District of Delaware ▼

Case number: ___23-10097___

☐ Check if this is an amended filing

Official Form 425C

# Monthly Operating Report for Small Business Under Chapter 11

12/17

Month: ___January 2023___

Line of business: ___Finance and Insurance___

Date report filed: ___02/23/2023___
MM / DD / YYYY

NAISC code: ___5511___

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party: ___Wyse Advisors LLC___

Original signature of responsible party _____

Printed name of responsible party ___Wyse Advisors LLC___

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

**If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.**

| | | Yes | No | N/A |
|---|---|---|---|---|
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☐ | ☐ | ☑ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☑ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |

**If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.**

| | | Yes | No | N/A |
|---|---|---|---|---|
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☑ | ☐ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

| Debtor Name | Arsenal Intermediate Holdings, LLC | Case number | 23-10097 |
| --- | --- | --- | --- |

17. Have you paid any bills you owed before you filed bankruptcy?    ☐ ☑ ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?    ☐ ☑ ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

    This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

    $ _____ 0.00

20. **Total cash receipts**

    Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

    Report the total from *Exhibit C* here.

    $ 270,000.00

21. **Total cash disbursements**

    Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

    Report the total from *Exhibit D* here.

    − $ 38,674.61

22. **Net cash flow**

    Subtract line 21 from line 20 and report the result here.
    This amount may be different from what you may have calculated as *net profit*.

    + $ 231,325.39

23. **Cash on hand at the end of the month**

    Add line 22 + line 19. Report the result here.

    Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

    This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

    = $ 231,325.39

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**

    $ _____ 0.00

    *(Exhibit E)*

Debtor Name  Arsenal Intermediate Holdings, LLC          Case number  23-10097

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**                                                                  $ _____0.00_____

    *(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed?                              _____0_____

27. What is the number of employees as of the date of this monthly report?                 _____0_____

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?               $ _____0.00_____

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed? $ _____0.00_____

30. How much have you paid this month in other professional fees?                                         $ _____0.00_____

31. How much have you paid in total other professional fees since filing the case?                        $ _____0.00_____

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
|  | **Projected** | − | **Actual** | = | **Difference** |
|  | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ 550,000.00 | − | $ 270,000.00 | = | $ 280,000.00 |
| 33. **Cash disbursements** | $ 5,000.00 | − | $ 38,674.61 | = | $ -33,674.61 |
| 34. **Net cash flow** | $ 545,000.00 | − | $ 213,825.00 | = | $ 313,674.00 |

35. Total projected cash receipts for the next month:                    $ _____0.00_____

36. Total projected cash disbursements for the next month:             − $ ___183,824.00___

37. Total projected net cash flow for the next month:                  = $ ___-183,824.00___

Debtor Name  Arsenal Intermediate Holdings, LLC                    Case number  23-10097

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑ 38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐ 39.  Bank reconciliation reports for each account.

☑ 40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☑ 41.  Budget, projection, or forecast reports.

☐ 42.  Project, job costing, or work-in-progress reports.

| Balance Sheet<br>Arsenal Intermediate Holdings, LLC | January 2023 |
|---|---|
| Cash and Cash Equivalents | $    231,325 |
| Accounts Receivable | - |
| Bad Debt Reserve | |
| Unbilled Accounts Receivable | - |
| Prepaid expenses End Other Assets | - |
| **Current Assets** | **231,325** |
| | |
| Property and Equipment, Net | - |
| DIP Financing | - |
| Intercompany | - |
| **Non-Current Assets** | **-** |
| | |
| **Assets** | **231,325** |
| | |
| Current Liabilities Subject to Compromise | - |
| Accrued Compansation and Benefits | - |
| **Current Liabilities** | **-** |
| | |
| Non-Current Liabilities Subject to Compromise | - |
| **Total Liabilities** | **-** |
| | |
| Members' Equity | 231,325 |
| Retained Earnings (Loss) | - |
| **Equity** | **$    231,325** |

**Account Activity Report**
**Requestor**   Cole Celenza
**Run Date**   06-Feb-2023 09:00:22 MST
**Query Range**   23-Jan-2023 - 03-Feb-2023
Bank of America, Florida | 063100277
Account        0978 | ARSENAL  NSURANCE (USD)



| Date | Description | Transaction | | Amount | Ledger Balance |
|------|-------------|-------------|---|--------|----------------|
| 31-Jan-2023 | Pre-encoded Deposit 2 | Cash Letter Pre-Encoded Dep CR (187) | | 17,500.00 | 0.00 |
| 31-Jan-2023 | ZBA TRANSFER FROM        7231 | ZBA Credit (275) | | 18,674.61 | (17,500.00) |
| **Text** | ZBA TRANSFER FROM        7231 | | | | |
| 31-Jan-2023 DES:PAYMENTS | ARSENAL  NSURANC | ACH Prefunding Settlement DR (447) | (3,862 64) | (36,174 61) | |
| **Text** | ARSENAL  NSURANC DES:PAYMENTS FL# 23031002228 NDN:SETT-BATCH 2204913990 CO  D 2204913990 CCD | | | | |
| 31-Jan-2023 | OnPay Inc DES:PayrollDDS | Preauthorized ACH Debit (455) | (23,025 38) | (32,311 97) | |
| **Text** | OnPay Inc DES:PayrollDDS  D:45337 NDN:Arsenal Insurance Mana CO  D:7581484145 CCD | | | | |
| 31-Jan-2023 | OnPay Inc DES:PayrollTS | Preauthorized ACH Debit (455) | (9,286.59) | (9,286.59) | |
| **Text** | OnPay Inc DES:PayrollTS  D:45337 INDN:Arsenal Insurance Mana CO  D:7581484145 CCD | | | | |
| 30-Jan-2023 89812 | ACCOUNT TRANSFER TRSF FROM | Individual Auto Transfer CR (201) | 20,000.00 | 0 00 | |
| **Text** | ACCOUNT TRANSFER TRSF FROM        7231 | | | | |
| 30-Jan-2023 | ZBA TRANSFER TO        7231 | ZBA Debit (575) | (20,000 00) | (20,000.00) | |
| **Text** | ZBA TRANSFER TO        7231 | | | | |

**Exhibit B**

| Question | Amount | Description |
|---|---|---|
| #15 | $250,000.00 | Arsenal Intermediate Holdings, LLC received $250,000 of initial DIP proceeds in accordance with the Motion to Approve Debtor in Possession Financing filed on 01/26/2023. |

**Exhibit C_Receipts**

| Account Name | Post Date | Reference | Amount | Category |
|---|---|---|---|---|
| Arsenal Intermediate Holdings, LLC | 1/27/2023 | ACCOUNT TRANSFER TRSF | 250,000.00 | DIP Proceeds |
| Arsenal Intermediate Holdings, LLC | 1/30/2023 | ZBA TRANSFER | 20,000.00 | Intercompany Transfer |
| **Total** | | | **270,000.00** | |

**Exhibit D_Disbursements**

| Account Name | Reference | Post Date | Amount |
|---|---|---|---|
| Arsenal Intermediate Holdings, LLC | ACCOUNT TRANSFER TRSF | 1/30/2023 | (20,000.00) |
| Arsenal Intermediate Holdings, LLC | OnPay Inc DES:PayrollTS ID:45337 | 1/31/2023 | (18,674.61) |
| **Total** | | | **(38,674.61)** |

Arsenal
13-Week Cash Flow

| Week Ended | 1 Forecast 27-Jan | 2 Forecast 3-Feb | 3 Forecast 10-Feb | 4 Forecast 17-Feb | 5 Forecast 24-Feb | 6 Forecast 3-Mar | 7 Forecast 10-Mar | 8 Forecast 17-Mar | 9 Forecast 24-Mar | 10 Forecast 31-Mar | 11 Forecast 7-Apr | 12 Forecast 14-Apr | 13 Forecast 21-Apr | 13-Week TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Opening Cash Balance | - | 545,000 | 452,357 | 452,357 | 414,999 | 361,176 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | - |
| Funding | 550,000 | - | - | - | - | 204,831 | - | 37,358 | 6,790 | 629,124 | - | 37,358 | 6,790 | 1,472,250 |
| **Receipts** | | | | | | | | | | | | | | |
| Operating Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Non-Operating Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Payroll | - | 44,148 | - | 37,358 | 6,790 | 37,358 | - | 37,358 | 6,790 | 37,358 | - | 37,358 | 6,790 | 251,306 |
| Rent | - | 15,803 | - | - | 15,703 | 100 | - | - | - | 18,293 | - | - | - | 49,899 |
| Insurance | - | 3,863 | - | - | - | - | - | - | - | - | - | - | - | 3,863 |
| Utilities | - | - | - | - | - | 549 | - | - | - | 549 | - | - | - | 1,099 |
| General and Administrative | - | 10,000 | - | - | 10,000 | 250,000 | - | - | - | 10,000 | - | - | - | 280,000 |
| Office | - | 11,000 | - | - | 11,000 | - | - | - | - | 11,000 | - | - | - | 33,000 |
| Ordinary Course Professionals | - | - | - | - | - | 70,000 | - | - | - | 55,000 | - | - | - | 125,000 |
| Tax | - | - | - | - | 4,500 | - | - | - | - | 1,800 | - | - | - | 6,300 |
| Other | 5,000 | 6,830 | - | - | 5,830 | - | - | - | - | 5,830 | - | - | - | 23,490 |
| Total Operating Disbursements | 5,000 | 91,643 | - | 37,358 | 53,823 | 358,007 | - | 37,358 | 6,790 | 139,830 | - | 37,358 | 6,790 | 773,956 |
| Total Operating Cash Flow | (5,000) | (91,643) | - | (37,358) | (53,823) | (358,007) | - | (37,358) | (6,790) | (139,830) | - | (37,358) | (6,790) | (773,956) |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | |
| Restructuring | - | 1,000 | - | - | - | 108,000 | - | - | - | 489,294 | - | - | - | 598,294 |
| Debt Service | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Non-Operating Disbursements | - | 1,000 | - | - | - | 108,000 | - | - | - | 489,294 | - | - | - | 598,294 |
| Total Cash Flow | (5,000) | (92,643) | - | (37,358) | (53,823) | (466,007) | - | (37,358) | (6,790) | (629,124) | - | (37,358) | (6,790) | (1,372,250) |
| Beginning Cash Balance | - | 545,000 | 452,357 | 452,357 | 414,999 | 361,176 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | - |
| Cash Flow | (5,000) | (92,643) | - | (37,358) | (53,823) | (466,007) | - | (37,358) | (6,790) | (629,124) | - | (37,358) | (6,790) | (1,372,250) |
| DIP Financing Draw / (Paydown) | 550,000 | - | - | - | - | 204,831 | - | 37,358 | 6,790 | 629,124 | - | 37,358 | 6,790 | 1,472,250 |
| Ending Cash Balance | 545,000 | 452,357 | 452,357 | 414,999 | 361,176 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 |
| Professional Fee Carve-Out Accrual | 50,000 | 186,059 | 278,118 | 370,176 | 462,235 | 500,294 | 582,353 | 664,412 | 746,471 | 395,294 | 462,353 | 529,412 | 586,471 | |

2/21/2023 8:03 PM

**<u>EXHIBIT C-1</u>**

**Debtors' Most Recent Post-Petition Operating Report**

**(Arsenal Health, LLC)**

---

**Fill in this information to identify the case:**

Debtor Name  Arsenal Health, LLC

United States Bankruptcy Court for the: District of Delaware  ▼

Case number:  23-10098

☐ Check if this is an
amended filing

---

## Official Form 425C

---

## Monthly Operating Report for Small Business Under Chapter 11    12/17

---

Month:  January 2023

Line of business:  Finance and Insurance

Date report filed:  02/23/2023
MM / DD / YYYY

NAISC code:  5511

**In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.**

Responsible party:  Wyse Advisors LLC

Original signature of responsible party  _____

Printed name of responsible party  Wyse Advisors LLC

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

| | | Yes | No | N/A |
|---|---|---|---|---|
| | **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.** | | | |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☐ | ☐ | ☑ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☑ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| | **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

| Debtor Name | Arsenal Health, LLC | Case number | 23-10098 |

17. Have you paid any bills you owed before you filed bankruptcy?  ☐ ☑ ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?  ☐ ☑ ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

    This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

    $ _____ 0.00

20. **Total cash receipts**

    Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

    Report the total from *Exhibit C* here.

    $ _____ 0.00

21. **Total cash disbursements**

    Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

    Report the total from *Exhibit D* here.

    − $ _____ 0.00

22. **Net cash flow**

    Subtract line 21 from line 20 and report the result here.
    This amount may be different from what you may have calculated as *net profit*.

    + $ _____ 0.00

23. **Cash on hand at the end of the month**

    Add line 22 + line 19. Report the result here.

    Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

    This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

    = $ _____ 0.00

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**

    $ _____ 0.00

    *(Exhibit E)*

Debtor Name  Arsenal Health, LLC                              Case number  23-10098

---

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**                                                                          $ _____ 0.00

   *(Exhibit F)*

---

## 5. Employees

26. What was the number of employees when the case was filed?                                        _____ 0

27. What is the number of employees as of the date of this monthly report?                           _____ 0

---

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?              $ _____ 0.00

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?     $ _____ 0.00

30. How much have you paid this month in other professional fees?                                        $ _____ 0.00

31. How much have you paid in total other professional fees since filing the case?                       $ _____ 0.00

---

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
|  | **Projected** | **–** | **Actual** | **=** | **Difference** |
|  | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ ____ 0.00 | – | $ ____ 0.00 | = | $ ____ 0.00 |
| 33. **Cash disbursements** | $ ____ 0.00 | – | $ ____ 0.00 | = | $ ____ 0.00 |
| 34. **Net cash flow** | $ ____ 0.00 | – | $ ____ 0.00 | = | $ ____ 0.00 |

35. Total projected cash receipts for the next month:                                    $ _____ 0.00

36. Total projected cash disbursements for the next month:                             - $ _____ 0.00

37. Total projected net cash flow for the next month:                                  = $ _____ 0.00

---

Debtor Name Arsenal Health, LLC                                   Case number 23-10098

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☐ 38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐ 39.  Bank reconciliation reports for each account.

☑ 40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☑ 41.  Budget, projection, or forecast reports.

☐ 42.  Project, job costing, or work-in-progress reports.

| Income Statement Arsenal Health, LLC | January 2023 |
|---|---|
| **Total Revenue** | $             - |
| Compensation | - |
| Benefits | - |
| Business Insurance | - |
| Facilities | - |
| Technology | - |
| T&E | - |
| Other Expenses | - |
| **Total Operating Expenses** | - |
| Non-Recurring Costs | - |
| **EBITDA** | **-** |
| Depreciation Expense | - |
| **Net Income** | $             - |

| Balance Sheet<br>Arsenal Health, LLC | January 2023 |
|---|---|
| Cash and Cash Equivalents | $            - |
| Accounts Receivable | - |
| Bad Debt Reserve | - |
| Unbilled Accounts Receivable | - |
| Prepaid expenses End Other Assets | 4,002 |
| **Current Assets** | **4,002** |
| | |
| Property and Equipment, Net | - |
| DIP Financing | - |
| Intercompany | (452,883) |
| **Non-Current Assets** | **(452,883)** |
| | |
| **Assets** | **(448,881)** |
| | |
| Current Liabilities Subject to Compromise | 188,417 |
| Accrued Compansation and Benefits | - |
| **Current Liabilities** | **188,417** |
| | |
| Non-Current Liabilities Subject to Compromise | - |
| **Total Liabilities** | **188,417** |
| | |
| Members' Equity | - |
| Retained Earnings (Loss) | (637,299) |
| **Equity** | **$      (637,299)** |

Arsenal
13-Week Cash Flow

| Week Ended | 1 Forecast 27-Jan | 2 Forecast 3-Feb | 3 Forecast 10-Feb | 4 Forecast 17-Feb | 5 Forecast 24-Feb | 6 Forecast 3-Mar | 7 Forecast 10-Mar | 8 Forecast 17-Mar | 9 Forecast 24-Mar | 10 Forecast 31-Mar | 11 Forecast 7-Apr | 12 Forecast 14-Apr | 13 Forecast 21-Apr | 13-Week TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Opening Cash Balance | $ - | $ 545,000 | $ 452,357 | $ 452,357 | $ 414,999 | $ 361,176 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ - |
| Funding | 550,000 | - | - | - | - | 204,831 | - | 37,358 | 6,790 | 629,124 | - | 37,358 | 6,790 | 1,472,250 |
| **Receipts** | | | | | | | | | | | | | | |
| Operating Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Non-Operating Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Payroll | | 44,148 | | 37,358 | 6,790 | 37,358 | | 37,358 | 6,790 | 37,358 | | 37,358 | 6,790 | 251,306 |
| Rent | | 15,803 | | | 15,703 | 100 | | | | 18,293 | | | | 49,899 |
| Insurance | | 3,863 | | | | | | | | | | | | 3,863 |
| Utilities | | | | | | 549 | | | | 549 | | | | 1,099 |
| General and Administrative | | 10,000 | | | 10,000 | 250,000 | | | | 10,000 | | | | 280,000 |
| Office | | 11,000 | | | 11,000 | | | | | 11,000 | | | | 33,000 |
| Ordinary Course Professionals | | | | | | 70,000 | | | | 55,000 | | | | 125,000 |
| Tax | | | | | 4,500 | | | | | 1,800 | | | | 6,300 |
| Other | 5,000 | 6,830 | | | 5,830 | | | | | 5,830 | | | | 23,490 |
| Total Operating Disbursements | 5,000 | 91,643 | - | 37,358 | 53,823 | 358,007 | - | 37,358 | 6,790 | 139,830 | - | 37,358 | 6,790 | 773,956 |
| Total Operating Cash Flow | (5,000) | (91,643) | - | (37,358) | (53,823) | (358,007) | - | (37,358) | (6,790) | (139,830) | - | (37,358) | (6,790) | (773,956) |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | |
| Restructuring | | 1,000 | | | | 108,000 | | | | 489,294 | | | | 598,294 |
| Debt Service | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Non-Operating Disbursements | - | 1,000 | - | - | - | 108,000 | - | - | - | 489,294 | - | - | - | 598,294 |
| Total Cash Flow | (5,000) | (92,643) | - | (37,358) | (53,823) | (466,007) | - | (37,358) | (6,790) | (629,124) | - | (37,358) | (6,790) | (1,372,250) |
| Beginning Cash Balance | $ - | $ 545,000 | $ 452,357 | $ 452,357 | $ 414,999 | $ 361,176 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ - |
| Cash Flow | (5,000) | (92,643) | - | (37,358) | (53,823) | (466,007) | - | (37,358) | (6,790) | (629,124) | - | (37,358) | (6,790) | (1,372,250) |
| DIP Financing Draw / (Paydown) | 550,000 | - | - | - | - | 204,831 | - | 37,358 | 6,790 | 629,124 | - | 37,358 | 6,790 | 1,472,250 |
| Ending Cash Balance | $ 545,000 | $ 452,357 | $ 452,357 | $ 414,999 | $ 361,176 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 |
| | | | | | | | | | | | | | | |
| Professional Fee Carve-Out Accrual | $ 50,000 | $ 186,059 | $ 278,118 | $ 370,176 | $ 462,235 | $ 500,294 | $ 582,353 | $ 664,412 | $ 746,471 | $ 395,294 | $ 462,353 | $ 529,412 | $ 586,471 | |

**EXHIBIT C-2**

**Debtors' Most Recent Post-Petition Operating Report**

**(Arsenal Insurance Management, LLC)**

| Fill in this information to identify the case: | |
|---|---|
| Debtor Name | Arsenal Insurance Management, LLC |
| United States Bankruptcy Court for the: | District of Delaware |
| Case number: | 23-10099 |

☐ Check if this is an amended filing

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11          12/17

Month: _____ January 2023 _____

Line of business: __ Finance and Insurance __

Date report filed: __ 02/23/2023 __
                    MM / DD / YYYY

NAISC code: __ 5511 __

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:                    Wyse Advisors LLC

Original signature of responsible party    _____

Printed name of responsible party        Wyse Advisors LLC

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

|  |  | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| | **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.** | | | |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☑ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| | **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name  Arsenal Insurance Management, LLC

Case number  23-10099

17. Have you paid any bills you owed before you filed bankruptcy?  ☑  ☐  ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?  ☐  ☑  ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

    This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

    $ _____ 0.00

20. **Total cash receipts**

    Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

    Report the total from *Exhibit C* here.

    $ 56,175.00

21. **Total cash disbursements**

    Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

    Report the total from *Exhibit D* here.

    − $ 56,175.00

22. **Net cash flow**

    Subtract line 21 from line 20 and report the result here.
    This amount may be different from what you may have calculated as *net profit*.

    + $ _____ 0.00

23. **Cash on hand at the end of the month**

    Add line 22 + line 19. Report the result here.

    Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

    This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

    = $ _____ 0.00

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**

    *(Exhibit E)*

    $ _____ 0.00

Debtor Name  Arsenal Insurance Management, LLC                    Case number  23-10099

---

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**                                                                $  337,784.00

   *(Exhibit F)*

---

## 5. Employees

26. What was the number of employees when the case was filed?                            10

27. What is the number of employees as of the date of this monthly report?               10

---

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?          $  0.00

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?   $  0.00

30. How much have you paid this month in other professional fees?                                    $  0.00

31. How much have you paid in total other professional fees since filing the case?                   $  0.00

---

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
|  | **Projected** | − | **Actual** | = | **Difference** |
|  | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ 0.00 | − | $ 56,175.00 | = | $ -56,175.00 |
| 33. **Cash disbursements** | $ 5,000.00 | − | $ 56,175.00 | = | $ -51,175.00 |
| 34. **Net cash flow** | $ -5,000.00 | − | $ 0.00 | = | $ -5,000.00 |

35. Total projected cash receipts for the next month:                        $ 183,824.00

36. Total projected cash disbursements for the next month:                 - $ 183,824.00

37. Total projected net cash flow for the next month:                       = $ 0.00

---

Debtor Name  Arsenal Insurance Management, LLC                    Case number 23-10099

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑ 38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐ 39.  Bank reconciliation reports for each account.

☑ 40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☑ 41.  Budget, projection, or forecast reports.

☐ 42.  Project, job costing, or work-in-progress reports.

| Income Statement Arsenal Insurance Management, LLC | | January 2023 |
|---|---|---|
| **Total Revenue** | $ | **9,770** |
| Compensation | | 14,640 |
| Benefits | | 3,081 |
| Business Insurance | | 1,568 |
| Facilities | | 3,017 |
| Technology | | 3,285 |
| T&E | | - |
| Other Expenses | | 166 |
| **Total Operating Expenses** | | 25,757 |
| Non-Recurring Costs | | 2,050 |
| **EBITDA** | | **(18,037)** |
| Depreciation Expense | | 148 |
| **Net Income** | $ | **(18,185)** |

| Balance Sheet<br>Arsenal Insurance Management, LLC | January 2023 |
|---|---|
| Cash and Cash Equivalents | $          - |
| Accounts Receivable | 337,784 |
| Bad Debt Reserve | (242,884) |
| Unbilled Accounts Receivable | 151,429 |
| Prepaid expenses End Other Assets | 75,378 |
| **Current Assets** | **321,707** |
| | |
| Property and Equipment, Net | 147,674 |
| DIP Financing | (250,000) |
| Intercompany | (1,350,987) |
| **Non-Current Assets** | **(1,453,313)** |
| | |
| **Assets** | **(1,131,606)** |
| | |
| Current Liabilities Subject to Compromise | 129,135 |
| Accrued Compansation and Benefits | 23,115 |
| **Current Liabilities** | **152,251** |
| | |
| Non-Current Liabilities Subject to Compromise | 126,078 |
| **Total Liabilities** | **278,329** |
| | |
| Members' Equity | 47,720,734 |
| Retained Earnings (Loss) | (49,130,669) |
| **Equity** | **$  (1,409,934)** |

**Account Activity Report**
Requestor   Cole Celenza
Run Date   06-Feb-2023 09:00:22 MST
Query Range   23-Jan-2023 - 03-Feb-2023
Bank of America, Florida | 063100277
Account 0978 | ARSENAL  NSURANCE (USD)



| Date | Description | Transaction | Amount | Ledger Balance |
|------|-------------|-------------|--------|----------------|
| 31–Jan-2023 | Pre-encoded Deposit 2 | Cash Letter Pre-Encoded Dep CR (187) | 17,500.00 | 0.00 |
| 31–Jan-2023 | ZBA TRANSFER FROM ███████7231 | ZBA Credit (275) | 18,674.61 | (17,500.00) |
| **Text** | ZBA TRANSFER FROM ██████ 7231 | | | |
| 31–Jan-2023 DES:PAYMENTS | ARSENAL  NSURANC | ACH Prefunding Settlement DR (447) | (3,862 64) | (36,174 61) |
| **Text** | ARSENAL  NSURANC DES:PAYMENTS FL# 23031002228  NDN:SETT-BATCH 2204913990 CO  D 2204913990 CCD | | | |
| 31–Jan-2023 | OnPay Inc DES:PayrollDDS | Preauthorized ACH Debit (455) | (23,025 38) | (32,311 97) |
| **Text** | OnPay Inc DES:PayrollDDS  D:45337 NDN:Arsenal Insurance Mana CO  D:7581484145 CCD | | | |
| 31–Jan-2023 | OnPay Inc DES:PayrollTS | Preauthorized ACH Debit (455) | (9,286.59) | (9,286.59) |
| **Text** | OnPay Inc DES:PayrollTS  D:45337 INDN:Arsenal Insurance Mana CO  D:7581484145 CCD | | | |
| 30–Jan-2023 89812 | ACCOUNT TRANSFER TRSF FROM | Individual Auto Transfer CR (201) | 20,000.00 | 0 00 |
| **Text** | ACCOUNT TRANSFER TRSF FROM ██████7231 | | | |
| 30–Jan-2023 | ZBA TRANSFER TO ██████7231 | ZBA Debit (575) | (20,000 00) | (20,000 00) |
| **Text** | ZBA TRANSFER TO ██████ 7231 | | | |

**Exhibit B**

| Question | Amount | Description |
|---|---|---|
| #17 | $32,459.97 | Arsenal Insurance Management paid wages to certain employees, in accordance with the Motion to Pay Employee Wages filed on 01/26/2023. |
| #17 | $3,862.64 | Arsenal Insurance Management paid certain prepetition insurance premium obligations in accordance with the Motion to Continue Prepetition Insurance Policies and Pay All Obligations in Respect Thereof filed on 01/26/2023. |

**Exhibit C_Receipts**

| Account Name | Post Date | Reference | Amount | Category |
|---|---|---|---|---|
| Arsenal Insurance Management, LLC | 1/30/2023 | ACCOUNT TRANSFER TRSF | 20,000.00 | Intercompany Transfer |
| Arsenal Insurance Management, LLC | 1/31/2023 | Cash Letter Pre-Encoded Dep CR (187) | 17,500.00 | Revenue |
| Arsenal Insurance Management, LLC | 1/31/2023 | ZBA TRANSFER | 18,674.61 | Intercompany Transfer |
| **Total** | | | **56,174.61** | |

**Exhibit D_Disbursements**

| Account Name | Reference | Post Date | Amount |
|---|---|---|---|
| Arsenal Insurance Management, LLC | ZBA TRANSFER | 1/30/2023 | (20,000.00) |
| Arsenal Insurance Management, LLC | OnPay Inc DES:PayrollTS ID:45337 | 1/31/2023 | (9,286.59) |
| Arsenal Insurance Management, LLC | OnPay Inc DES:PayrollDDS ID:45337 | 1/31/2023 | (23,025.38) |
| Arsenal Insurance Management, LLC | ARSENAL INSURANC DES:PAYMENTS FL# 23031002228 INDN:SETT-BATCH 2204913990 CO ID:2204913990 CCD | 1/31/2023 | (3,862.64) |
| **Total** | | | **(56,174.61)** |

Arsenal
13-Week Cash Flow

| Week Ended | 1 Forecast 27-Jan | 2 Forecast 3-Feb | 3 Forecast 10-Feb | 4 Forecast 17-Feb | 5 Forecast 24-Feb | 6 Forecast 3-Mar | 7 Forecast 10-Mar | 8 Forecast 17-Mar | 9 Forecast 24-Mar | 10 Forecast 31-Mar | 11 Forecast 7-Apr | 12 Forecast 14-Apr | 13 Forecast 21-Apr | 13-Week TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Opening Cash Balance | $ - | $ 545,000 | $ 452,357 | $ 452,357 | $ 414,999 | $ 361,176 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ - |
| Funding | 550,000 | - | - | - | - | - | - | - | - | - | - | - | - | 1,472,250 |
| **Receipts** | | | | | | | | | | | | | | |
| Operating Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Non-Operating Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Payroll | - | 44,148 | - | 37,358 | 6,790 | 37,358 | - | 37,358 | 6,790 | 37,358 | - | 37,358 | 6,790 | 251,306 |
| Rent | - | 15,803 | - | - | 15,703 | 100 | - | - | - | 18,293 | - | - | - | 49,899 |
| Insurance | - | 3,863 | - | - | - | - | - | - | - | - | - | - | - | 3,863 |
| Utilities | - | - | - | - | - | 549 | - | - | - | 549 | - | - | - | 1,099 |
| General and Administrative | - | 10,000 | - | - | 10,000 | 250,000 | - | - | - | 10,000 | - | - | - | 280,000 |
| Office | - | 11,000 | - | - | 11,000 | - | - | - | - | 11,000 | - | - | - | 33,000 |
| Ordinary Course Professionals | - | - | - | - | - | 70,000 | - | - | - | 55,000 | - | - | - | 125,000 |
| Tax | - | - | - | - | 4,500 | - | - | - | - | 1,800 | - | - | - | 6,300 |
| Other | 5,000 | 6,830 | - | - | 5,830 | - | - | - | - | 5,830 | - | - | - | 23,490 |
| Total Operating Disbursements | 5,000 | 91,643 | - | 37,358 | 53,823 | 358,007 | - | 37,358 | 6,790 | 139,830 | - | 37,358 | 6,790 | 773,956 |
| Total Operating Cash Flow | (5,000) | (91,643) | - | (37,358) | (53,823) | (358,007) | - | (37,358) | (6,790) | (139,830) | - | (37,358) | (6,790) | (773,956) |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | |
| Restructuring | - | 1,000 | - | - | - | 108,000 | - | - | - | 489,294 | - | - | - | 598,294 |
| Debt Service | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Non-Operating Disbursements | - | 1,000 | - | - | - | 108,000 | - | - | - | 489,294 | - | - | - | 598,294 |
| Total Cash Flow | (5,000) | (92,643) | - | (37,358) | (53,823) | (466,007) | - | (37,358) | (6,790) | (629,124) | - | (37,358) | (6,790) | (1,372,250) |
| Beginning Cash Balance | $ - | $ 545,000 | $ 452,357 | $ 452,357 | $ 414,999 | $ 361,176 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ - |
| Cash Flow | (5,000) | (92,643) | - | (37,358) | (53,823) | (466,007) | - | (37,358) | (6,790) | (629,124) | - | (37,358) | (6,790) | (1,372,250) |
| DIP Financing Draw / (Paydown) | 550,000 | - | - | - | - | 204,831 | - | 37,358 | 6,790 | 629,124 | - | 37,358 | 6,790 | 1,472,250 |
| Ending Cash Balance | $ 545,000 | $ 452,357 | $ 452,357 | $ 414,999 | $ 361,176 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 |
| Professional Fee Carve-Out Accrual | $ 50,000 | $ 186,059 | $ 278,118 | $ 370,176 | $ 462,235 | $ 500,294 | $ 582,353 | $ 664,412 | $ 746,471 | $ 395,294 | $ 462,353 | $ 529,412 | $ 586,471 | |

# **EXHIBIT D**

## **Debtors' Executory Contracts and Unexpired Leases**

## **(Arsenal Health, LLC)**

**Fill in this information to identify the case:**

Debtor name    **Arsenal Health, LLC**

United States Bankruptcy Court for the:    **District of Delaware**

Case number (if known)    **23-10098**

☐ Check if this is an amended filing

Official Form 206G

# Schedule G: Executory Contracts and Unexpired Leases

12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.    **Does the debtor have any executory contracts or unexpired leases?**

☐ No. Check this box and file this form with the debtor's other schedules. There is nothing else to report on this form.

☑ Yes. Fill in all of the information below even if the contacts of leases are listed on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B).

| 2.List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|
| 2.1 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 11/01/22 | |
| | State the term remaining | 9 Months | |
| | List the contract number of any government contract | | B.L.S. Restaurant L.L.C.<br>1154 West Beach Blvd, Suite E<br>Gulf Shores AL 36542 |
| 2.2 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 07/01/22 | |
| | State the term remaining | 5 months | |
| | List the contract number of any government contract | | Billy's Paint & Body<br>820 Old Highway 431<br>Headland AL 36345 |
| 2.3 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 02/01/22 | |
| | State the term remaining | 6 days | |
| | List the contract number of any government contract | | Bowling Family Medical Clinic<br>1369-A GEORGE WALLACE HWY<br>Russellville AL 35654 |

| Debtor | **Arsenal Health, LLC** | | Case number (if known) | **23-10098** |
|---|---|---|---|---|
| | Name | | | |

| 2.4 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 09/01/22 | |
|---|---|---|---|
| | State the term remaining | 7 months | |
| | List the contract number of any government contract | | Bryan L Parker CPA LLC<br>2501 Meadowview Lane, Suite 201<br>Pelham AL 35124 |
| 2.5 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 10/01/22 | |
| | State the term remaining | 8 months | |
| | List the contract number of any government contract | | Cross Roads Church of God<br>10777 County Road 138<br>Bay Minette AL 36507 |
| 2.6 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 03/01/22 | |
| | State the term remaining | 1 month | |
| | List the contract number of any government contract | | Darden Green Company Inc<br>3378 Wood Drive Circle NE<br>Birmingham AL 35215 |
| 2.7 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 09/01/22 | |
| | State the term remaining | 7 months | |
| | List the contract number of any government contract | | Deep South Decorative Concrete<br>1400 County Hwy 12<br>Oneonta AL 35121 |
| 2.8 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 08/01/22 | |
| | State the term remaining | 6 months | |
| | List the contract number of any government contract | | DEFT Dynamics<br>3029 4th Avenue S<br>Birmingham AL 35233 |

| Debtor | **Arsenal Health, LLC** | | Case number (if known) | **23-10098** |
|---|---|---|---|---|
| | Name | | | |

| 2.9 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 08/01/22 | | |
|---|---|---|---|---|
| | State the term remaining | 6 months | | |
| | | | Diamond J Industries Inc | |
| | List the contract number of any government contract | | 1070 East Main Street Liberty MS 39645 | |

| 2.10 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 06/01/22 | | |
|---|---|---|---|---|
| | State the term remaining | 4 months | | |
| | | | Emery Wings LLC DBA Coop DeVille | |
| | List the contract number of any government contract | | 401 Pelham Road South Jacksonville AL 36265 | |

| 2.11 | State what the contract or lease is for and the nature of the debtor's interest | Health Plan Services (third party administration); 11/01/19 | | |
|---|---|---|---|---|
| | State the term remaining | 10 Months | | |
| | | | Fringe Benefit Coordinators, Inc. | |
| | List the contract number of any government contract | | 4500 NW 27th Ave Gainesville FL 32606 | |

| 2.12 | State what the contract or lease is for and the nature of the debtor's interest | Lease of 5151 Hampstead High Street, Suite 200, Montgomery, AL  36116; 12/19/19 | | |
|---|---|---|---|---|
| | State the term remaining | 11 months | | |
| | | | Hampstead Town Center, LLC | |
| | List the contract number of any government contract | | 5151 Hampstead High Street Montgomery AL 36116 | |

| 2.13 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 07/01/22 | | |
|---|---|---|---|---|
| | State the term remaining | 5 months | | |
| | | | HLW Pubs LLC dba Session | |
| | List the contract number of any government contract | | 1200 21st Avenue Northport AL 35476 | |

| Debtor | **Arsenal Health, LLC** | | Case number (if known) | 23-10098 |
|---|---|---|---|---|
| | Name | | | |

**2.14**
| State what the contract or lease is for and the nature of the debtor's interest | Customer; 09/01/22 |
|---|---|
| State the term remaining | 7 months |
| List the contract number of any government contract | |

Jimmy and Darreus Transportation LLC
5040 Coosada Ferry Road
Montgomery AL 36110

**2.15**
| State what the contract or lease is for and the nature of the debtor's interest | Customer; 02/01/22 |
|---|---|
| State the term remaining | 6 days |
| List the contract number of any government contract | |

Kabasag, Inc. dba The Garage
5040 Coosada Ferry Road
Montgomery AL 36110

**2.16**
| State what the contract or lease is for and the nature of the debtor's interest | Customer; 05/01/22 |
|---|---|
| State the term remaining | 3 months |
| List the contract number of any government contract | |

Maurin Architecture
601 Saint Anthony Street
Mobile AL 36603

**2.17**
| State what the contract or lease is for and the nature of the debtor's interest | Customer; 02/01/22 |
|---|---|
| State the term remaining | 6 days |
| List the contract number of any government contract | |

MCM Vending, LLC
PO Box 3475
Muscle Shoals AL 35662

**2.18**
| State what the contract or lease is for and the nature of the debtor's interest | Customer; 02/01/22 |
|---|---|
| State the term remaining | 6 days |
| List the contract number of any government contract | |

Met-tech Machining, Inc.
225 Jeanette E. Barrett Blvd
Wetumpka AL 36092

Debtor **Arsenal Health, LLC**                                           Case number (if known) **23-10098**

Name

| 2.19 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 07/01/22 | |
|---|---|---|---|
| | State the term remaining | 5 months | |
| | List the contract number of any government contract | | National 3PL<br>402 Appleford Road<br>Helena AL 35080 |
| 2.20 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 08/01/22 | |
| | State the term remaining | 6 months | |
| | List the contract number of any government contract | | Northport Funeral & Cremation Service<br>5404 Watermelon Road<br>Northport AL 35473 |
| 2.21 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 10/01/22 | |
| | State the term remaining | 8 months | |
| | List the contract number of any government contract | | Paws & Claws, LLC<br>5291 Valleydale Rd Suite 139<br>Birmingham AL 35242 |
| 2.22 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 03/01/22 | |
| | State the term remaining | 1 month | |
| | List the contract number of any government contract | | Pursuit Engineering, Inc.<br>323 E. Glenn Ave<br>Auburn AL 36830 |
| 2.23 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 02/01/22 | |
| | State the term remaining | 6 days | |
| | List the contract number of any government contract | | RA-DON LLC<br>3204 S Eufaula Avenue<br>Eufaula AL 36027 |

| Debtor | **Arsenal Health, LLC** | | Case number (if known) | **23-10098** |
|---|---|---|---|---|
| | Name | | | |

| 2.24 | State what the contract or lease is for and the nature of the debtor's interest | Health Plan Services (third party administration); 11/01/21 | |
|---|---|---|---|
| | State the term remaining | 10 Months | |
| | List the contract number of any government contract | | Rx Valet LLC<br>1580 Atkinson Road<br>Lawrenceville GA 30043 |

| 2.25 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 11/01/22 | |
|---|---|---|---|
| | State the term remaining | 9 months | |
| | List the contract number of any government contract | | SafeSpray Pest Control<br>2850 Wyndham Industrial Drive<br>Opelika AL 36804 |

| 2.26 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 04/01/22 | |
|---|---|---|---|
| | State the term remaining | 2 months | |
| | List the contract number of any government contract | | Selikoff Center Inc<br>P.O. Box 20908<br>Montgomery AL 36120 |

| 2.27 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 04/01/22 | |
|---|---|---|---|
| | State the term remaining | 2 months | |
| | List the contract number of any government contract | | Spencer Management Group Inc. dba Image Arts<br>213 Country Club Park<br>Mountain Brook AL 35213 |

| 2.28 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 05/01/22 | |
|---|---|---|---|
| | State the term remaining | 3 months | |
| | List the contract number of any government contract | | Starr Insurance Group LLC<br>1736 W 2nd St<br>Montgomery AL 36106 |

| Debtor | **Arsenal Health, LLC** | | Case number (if known) | **23-10098** |
|---|---|---|---|---|
| | Name | | | |

| 2.29 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 05/01/22 | |
|---|---|---|---|
| | State the term remaining | 3 months | |
| | List the contract number of any government contract | | The Grounds Guys of Huntsville<br>240 Glover Road<br>Owens Crossroads AL 35763 |

| 2.30 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 02/01/22 | |
|---|---|---|---|
| | State the term remaining | 6 days | |
| | List the contract number of any government contract | | Tree Professional Inc.<br>35300 County Road 8<br>Florence AL 35634 |

| 2.31 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 09/01/22 | |
|---|---|---|---|
| | State the term remaining | 7 months | |
| | List the contract number of any government contract | | Tri-Fab Steel, Inc<br>2612 24th St N<br>Birmingham AL 35234 |

| 2.32 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 05/01/22 | |
|---|---|---|---|
| | State the term remaining | 3 months | |
| | List the contract number of any government contract | | United Building Supply<br>2402 Florence Blvd<br>Florence AL 35630 |

| 2.33 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 02/01/22 | |
|---|---|---|---|
| | State the term remaining | 6 days | |
| | List the contract number of any government contract | | WEAGLE INC<br>1693 Fairway Drive<br>Auburn AL 36830 |

**<u>EXHIBIT D-1</u>**

**Debtors' Executory Contracts and Unexpired Leases**

**(Arsenal Insurance Management, LLC)**

30129786.40

**Fill in this information to identify the case:**

Debtor name    **Arsenal Insurance Management, LLC**

United States Bankruptcy Court for the:    **District of Delaware**

Case number (if known)    **23-10099**

☐ Check if this is an amended filing

Official Form 206G

# Schedule G: Executory Contracts and Unexpired Leases

12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1. **Does the debtor have any executory contracts or unexpired leases?**

   ☐ No. Check this box and file this form with the debtor's other schedules. There is nothing else to report on this form.

   ■ Yes. Fill in all of the information below even if the contacts of leases are listed on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B).

| 2.List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|
| 2.1 | State what the contract or lease is for and the nature of the debtor's interest | Trade Debt - Software; 10/03/21 | |
| | State the term remaining | 8 months | |
| | List the contract number of any government contract | | Adobe<br>345 Park Avenue<br>San Jose CA 95110-2704 |
| 2.2 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 01/01/22 | |
| | State the term remaining | 11 months | |
| | List the contract number of any government contract | | Alpha Collective Insurance Company, Inc<br>2591 Dallas Parkway<br>Ste. 300<br>Frisco TX 75034 |
| 2.3 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 12/31/19 | |
| | State the term remaining | 11 months | |
| | List the contract number of any government contract | | American Global Insurance Company, Inc<br>13 Rosedown Court<br>New Orleans LA 70131 |

| Debtor | **Arsenal Insurance Management, LLC** | | Case number (if known) | **23-10099** |
|---|---|---|---|---|
| | Name | | | |

| 2.4 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 01/01/21 | |
|---|---|---|---|
| | State the term remaining | 11 months | |
| | List the contract number of any government contract | | Assuriun, LLC (cell)<br>648 Grassmere Park<br>Ste. 300<br>Nashville TN 37211 |

| 2.5 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 01/01/21 | |
|---|---|---|---|
| | State the term remaining | 11 months | |
| | List the contract number of any government contract | | Centuriun, LLC (cell)<br>910 Ravenwood Drive<br>Selma AL 36701 |

| 2.6 | State what the contract or lease is for and the nature of the debtor's interest | Trade Debt - Enrollment Services; 10/15/21 | |
|---|---|---|---|
| | State the term remaining | 10 Months | |
| | List the contract number of any government contract | | DirectWeb Administrative Services, LLC d/b/a Genius Avenue<br>4280 N. Campbell Avenue<br>Suite 200<br>Tucson AZ 85718 |

| 2.7 | State what the contract or lease is for and the nature of the debtor's interest | Trade Debt - Enrollment Services; 12/10/2018 | |
|---|---|---|---|
| | State the term remaining | 10 months | |
| | List the contract number of any government contract | | Enrollease<br>500 Treat Avenue<br>San Francisco CA 94110 |

| 2.8 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 01/01/22 | |
|---|---|---|---|
| | State the term remaining | 11 months | |
| | List the contract number of any government contract | | Fox Bay Insurance Company (cell)<br>5151 Hampstead High Street<br>Montgomery AL 36116 |

| Debtor | **Arsenal Insurance Management, LLC** | | Case number (if known) | 23-10099 |
|---|---|---|---|---|
| | Name | | | |

| 2.9 | State what the contract or lease is for and the nature of the debtor's interest | Health Plan Services (third party administration); 11/01/19 | |
|---|---|---|---|
| | State the term remaining | 10 Months | |
| | List the contract number of any government contract | | Fringe Benefit Coordinators, Inc.<br>4500 NW 27th Ave<br>Gainesville FL 32606 |

| 2.10 | State what the contract or lease is for and the nature of the debtor's interest | Trade Debt - Domain Registration - Email; N/A | |
|---|---|---|---|
| | State the term remaining | N/A | |
| | List the contract number of any government contract | | GoDaddy<br>14455 North Hayden Road<br>Suite 226<br>Scottsdale AZ 85260 |

| 2.11 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 01/01/22 | |
|---|---|---|---|
| | State the term remaining | 11 months | |
| | List the contract number of any government contract | | HFIS Insurance Company (cell)<br>333 W. Santa Clara<br>Ste. 604<br>San Jose CA 95113 |

| 2.12 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 01/01/21 | |
|---|---|---|---|
| | State the term remaining | 11 months | |
| | List the contract number of any government contract | | Insuriun II, LLC ( core)<br>13005 US HWY 301 South<br>Riverview FL 33578 |

| 2.13 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 01/01/21 | |
|---|---|---|---|
| | State the term remaining | 11 months | |
| | List the contract number of any government contract | | Insuriun, Inc (cell)<br>910 Ravenwood Drive<br>Selma AL 36701 |

| Debtor | **Arsenal Insurance Management, LLC** | | Case number (if known) | **23-10099** |
|---|---|---|---|---|
| | Name | | | |

| 2.14 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 01/01/21 | |
|---|---|---|---|
| | State the term remaining | 11 months | |
| | List the contract number of any government contract | | Iron Re Dental Insurance Company, Inc<br>5151 Hampstead High Street<br>Montgomery AL 36116 |

| 2.15 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 01/01/22 | |
|---|---|---|---|
| | State the term remaining | 11 months | |
| | List the contract number of any government contract | | Iron Reassurance Company, LLC (core)<br>5151 Hampstead High St.<br>Suite 200<br>Montgomery AL 36116 |

| 2.16 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 01/20/21 | |
|---|---|---|---|
| | State the term remaining | 12 months | |
| | List the contract number of any government contract | | LAP, Commercial Insurance Company, Inc. RRG<br>1921 E. Elizabeth Avenue<br>Linden NJ 07036 |

| 2.17 | State what the contract or lease is for and the nature of the debtor's interest | Trade Debt - Software; 04/30/22 | |
|---|---|---|---|
| | State the term remaining | 14 months | |
| | List the contract number of any government contract | | LogMein, Inc.<br>333 Summer Street<br>Boston MA 02210 |

| 2.18 | State what the contract or lease is for and the nature of the debtor's interest | Trade Debt - Actuarial Services; 06/05/22 | |
|---|---|---|---|
| | State the term remaining | N/A | |
| | List the contract number of any government contract | | Milliman, Inc.<br>15800 W. Bluemound Road<br>Suite 100<br>Brookfield WI 53005 |

| Debtor | **Arsenal Insurance Management, LLC** | | Case number (if known) | **23-10099** |
|---|---|---|---|---|
| | Name | | | |

| | | | |
|---|---|---|---|
| 2.19 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 08/01/19 | |
| | State the term remaining | 6 months | Nosiv Insurance Company, Inc |
| | List the contract number of any government contract | | 5151 Hampstead High Street Montgomery AL 36116 |
| 2.20 | State what the contract or lease is for and the nature of the debtor's interest | Trade Debt - IT; 10/17/23 | |
| | State the term remaining | 9 Months | Rackspace Technology, Inc |
| | List the contract number of any government contract | | PO Box 731214 Dallas TX 75373-1214 |
| 2.21 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 01/01/21 | |
| | State the term remaining | 11 months | Rushmore Insurance Company, Inc |
| | List the contract number of any government contract | | 15480 Laguna Canyon Road Ste. 100 Irvine CA 92618 |
| 2.22 | State what the contract or lease is for and the nature of the debtor's interest | Health Plan Services (third party administration); 11/01/21 | |
| | State the term remaining | 10 Months | Rx Valet LLC |
| | List the contract number of any government contract | | 1580 Atkinson Road Lawrenceville GA 30043 |
| 2.23 | State what the contract or lease is for and the nature of the debtor's interest | Trade Debt - Underwriting Tech; 11/11/21 | |
| | State the term remaining | 9 Months | Selectsys Tech LLC |
| | List the contract number of any government contract | | 1905 Belcaro Dr Knoxville TN 37918 |

| Debtor | **Arsenal Insurance Management, LLC** | | Case number (if known) | **23-10099** |
|---|---|---|---|---|
| | Name | | | |

| | | | |
|---|---|---|---|
| 2.24 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 12/31/19 | |
| | State the term remaining | 11 months | |
| | List the contract number of any government contract | | Supreme Insurance Company, Inc<br>2027 Stonegate Trail<br>Suite 115<br>Birmingham AL 35242 |
| 2.25 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 06/01/19 | |
| | State the term remaining | 4 months | |
| | List the contract number of any government contract | | Surya Insurance Company, Inc. RRG<br>5151 Hampstead High Street<br>Montgomery AL 36116 |
| 2.26 | State what the contract or lease is for and the nature of the debtor's interest | Customer; 02/12/19 | |
| | State the term remaining | 1 month | |
| | List the contract number of any government contract | | TWG Insurance Company, Inc<br>13005 US HWY 301 South<br>Riverview FL 33578 |
| 2.27 | State what the contract or lease is for and the nature of the debtor's interest | Trade Debt - Copier Financing; 01/26/21 | |
| | State the term remaining | 36 months | |
| | List the contract number of any government contract | | US Bank Equipment Finance<br>P.O. Box 790448<br>St. Louis MO 63179-0448 |
| 2.28 | State what the contract or lease is for and the nature of the debtor's interest | Lease of 120 18th Street South, Birmingham, AL (6,985 SF); 11/09/20 | |
| | State the term remaining | 11 months | |
| | List the contract number of any government contract | | Vulcan Birmingham, LLC<br>120 18th Street South<br>Sute 201<br>Birmingham AL 35233 |

**<u>EXHIBIT E</u>**

**Liquidation Analysis**

***Debtors' Estimated Liquidation Value of Assets***

| Arsenal Liquidation Analysis | Notes | Book Value | Assumptions Low | Assumptions High | Chapter 7 Recovery Low | Chapter 7 Recovery High | Chapter 11 Recovery Low | Chapter 11 Recovery High |
|---|---|---|---|---|---|---|---|---|
| **Assets** | | | **Low** | **High** | **Low** | **High** | **Low** | **High** |
| Cash on Hand | [a] | $ 247,047 | 100% | 100% | $ 247,047 | $ 247,047 | $ 247,047 | $ 247,047 |
| Liquidating Trust Funding | [b] | 200,000 | 100% | 100% | - | - | 200,000 | 200,000 |
| Trade Accounts Receivable | [c] | 94,901 | 0% | 0% | - | - | - | - |
| Unbilled Accounts Receivable | [d] | 151,429 | 25% | 50% | 37,857 | 75,715 | 37,857 | 75,715 |
| Prepaid Expenses and Insurance | [e] | 79,379 | 0% | 0% | - | - | - | - |
| Lease Right-of-Use Asset | [f] | 124,837 | 0% | 0% | - | - | - | - |
| Property and Equipment | [g] | 22,837 | 5% | 10% | 1,142 | 2,284 | 1,142 | 2,284 |
| **Total Assets Available for Distribution** | | | | | $ 286,046 | $ 325,045 | $ 486,046 | $ 525,045 |
| | | | | | | | | |
| **Administrative Expenses** | | | | | | | | |
| DIP Financing | [h] | | | | $ 2,250,000 | $ 2,250,000 | $ - | $ - |
| Professional Fee Accruals | [i] | | | | 347,353 | 347,353 | 347,353 | 347,353 |
| Subchapter V Trustee Fees | | | | | 30,000 | 40,000 | 30,000 | 40,000 |
| Chapter 7 Trustee Fees | | | | | 17,552 | 19,502 | - | - |
| **Total Administrative Expenses** | | | | | $ 2,644,905 | $ 2,656,855 | $ 377,353 | $ 387,353 |
| | | | | | | | | |
| **Available for Distribution to Unsecured Claims** | | | | | $ - | $ - | $ 108,693 | $ 137,692 |

[a] Reflects estimated cash on hand as of the Effective Date. Under a liquidation, all of the Debtors' cash on hand would be available for distribution to creditors.

[b] In accordance with the terms of the Beyond Risk Settlement, Beyond Risk will contribute $200,000 to fund the Liquidating Trust, contingent upon confirmation of the Plan.

[c] Balance as of 01/31/23. This assumes no recovery due to the ongoing litigation involving former management and because a significant portion of the Trade Accounts Receivable has been deemed unrecoverable.

[d] The Unbilled Accounts Receivable reflects unbilled amounts to the Debtors' active captive customers as of 01/31/23. The Debtors do not anticipate a full recovery on these receivables due to uncertainty surrounding customer retention and the ongoing litigation involving former management.

[e] Balance as of 01/31/23. Prepaid Expenses and Insurance is primarily comprised of prepaid insurance. Given the lack of marketability of these assets, no recovery is assumed.

[f] Balance as of 01/31/23. The determination of whether the Unexpired Lease will be assumed, assigned, or rejected is dependent on the outcome of the Sale Process, and may result in cure payments to be incurred by the Debtors. As such, no recovery has been assigned to the Lease Right-of-Use Asset.

[g] Balance as of 01/31/23. The Debtors' Property and Equipment is primarily comprised of computers used in the day-to-day operations of the Debtors. Given the confidential information on the computers, the computers will need to be preserved, and are not available for liquidation. The remaining property is comprised of miscellaneous computer equipment (i.e., monitors). As such, no recovery is expected.

[h] This assumes that full the full amount of the DIP Loan has been approved by the Court and drawn on the Effective Date. Under a chapter 7 liquidation, 100% of the DIP proceeds would come due in accordance with the DIP Credit Agreement. However, under the proposed chapter 11 Plan, on the Effective Date, the DIP Lender will waive recovery from the Debtors on account of DIP Claims up to an aggregate amount of $1.5 million and accept treatment of claims under the DIP Credit Agreement in excess of $1.5 million, if any, as Allowed General Unsecured Claims. Beyond Risk also agreed to waive recovery from the Debtors on account of the Beyond Risk Intercompany Claims in the amount of approximately $1.8 million and to fund the Liquidating Trust in the amount of $200,000.00.

[i] Reflects the estimated professional fee accrual as of the Effective Date.